**Appeal of RICHBORO CD PARTNERS, L.P. From the Decision of the Board of Supervisors of Northampton Township Dated January 15, 2012.**

**Appeal of: Richboro CD Partners, L.P.**

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 2013.

Decided April 8, 2014.

---

Marc B. Kaplin, Blue Bell, for appellant.

Michael J. Savona, Doylestown, for appellee Northampton Township.

Jeffrey S. Batoff, Philadelphia, for appellees Murray Battleman, Lynda Battle-

man, C & B Supermarket, Inc., Richboro Shop N Bag, William O'Hara, Mary Rita O'Hara, Douglas E. Meyers, Christine Meyers, Paul J. Scipione, Bridget Scipione, Allan R. Spurr, Bonnie G. Spurr, Mr. Printer, Inc., Douglas C. Brong, and Richboro Optique.

BEFORE: PELLEGRINI, President Judge, and COVEY, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Richboro CD Partners L.P. (Richboro) appeals the November 29, 2012 order of the Bucks County Court of Common Pleas (Trial Court) affirming the decision of the Board of Supervisors of Northampton Township (Board) denying Richboro's application for conditional use approval pursuant to the Northampton Township Zoning Ordinance (Ordinance). Richboro sought conditional use approval to construct a shopping center on a split-zoned site where a portion of the site is located in the R–2 Residential District (R–2 District) and a portion is located in the village overlay (VOD) section of the C–2 General Commercial/ Office District (C–2 District) in Northampton Township (Township). Ordinance §§ 140–15, 140–20.

▇▇▇ A conditional use is a special exception which falls within the jurisdiction of the municipal legislative body rather than the zoning hearing board. Section 603(c) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10603(c). The municipal legislative body may grant a conditional use pursuant to the express standards and criteria set forth in the zoning ordinances enacted pursuant to the police powers to regulate land use. *Id.; Clinton County Solid Waste Authority v. Wayne Township*, 164 Pa. Cmwlth. 632, 643 A.2d 1162, 1168 (1994). The fact that a use is permitted as a conditional use, rather than prohibited, reflects a legislative decision that the use is not *per se* adverse to the public interest. *K. Hovnanian Pennsylvania Acquisitions, LLC v. Newtown Township Board of Supervisors*, 954 A.2d 718, 725 (Pa.Cmwlth. 2008); *Susquehanna Township Board of Commissioners v. Hardee's Food Systems, Inc.*, 59 Pa.Cmwlth. 479, 430 A.2d 367, 369 (1981).

▇▇▇ In order to demonstrate that the applicant is entitled to the conditional use, the applicant initially bears the burden of establishing that the application complies with the objective standards and criteria of the particular ordinance. *Visionquest National, Ltd. v. Board of Supervisors of Honey Brook Township, Chester County*, 524 Pa. 107, 112, 569 A.2d 915, 917 (1990); *City of Hope v. Sadsbury Township Zoning Hearing Board*, 890 A.2d 1137, 1147 (Pa.Cmwlth.2006). Satisfaction of the applicant's burden establishes a legislative presumption that the use is consistent with the health, safety, and welfare of the community. *Id.; Susquehanna Township*, 430 A.2d at 369. Once the applicant has satisfied this initial burden, the burden shifts to the objectors to rebut this presumption by establishing that the use will have a detrimental impact on the surrounding community. *Joseph v. North Whitehall Township Board of Supervisors*, 16 A.3d 1209, 1215 (Pa.Cmwlth.2011); *Sheetz v. Phoenixville Borough Council*, 804 A.2d 113, 115 (Pa. Cmwlth.2002).

▇▇▇ Here, the shopping center proposed by Richboro included a large brandnamed supermarket and four smaller accessory stores located at the northwest corner of the intersection of Second Street and Bustleton Pike. The Board denied conditional use approval in a lengthy decision

containing 178 findings of fact, 12 conclusions of law, and a detailed discussion. The Trial Court affirmed the Board's denial of the conditional use application based on the record before the Board.[1] The basis for denial of Richboro's application for conditional use approval included: (i) supermarkets are not permitted in the C–2 District, unless they are developed as a conditional use in accordance with the VOD[2] requirements; (ii) the VOD plan submitted by Richboro failed to satisfy the requirements of the subdivision and land development ordinance (SALDO); (iii) the development plan submitted by Richboro exceeded the maximum permitted impervious surface coverage; and (iv) the traffic impact from the proposed development would be detrimental to the public health, safety, and welfare of the community.[3]

On appeal, Richboro raises four issues for our review. First, Richboro contends that the Board and the Trial Court erred in concluding that a supermarket is not a permitted use in a shopping center within the C–2 District. Second, Richboro contends that the Board and the Trial Court erred in concluding that it was required to demonstrate that its VOD plan complied with the SALDO in order to obtain conditional use approval. Third, Richboro argues that the Board and the Trial Court erred in calculating the maximum impervious surface area coverage permitted on the site. Lastly, Richboro argues that the Board and the Trial Court erred in concluding that the traffic impact of the proposed shopping center would be detrimental to the public health, safety, and welfare of the surrounding community.[4]

## I.

Richboro contends that a supermarket is a permitted use in a shopping center within the C–2 District, because a supermarket is a "general merchandise store" or a "retail store," which the Ordinance specifically identifies as a permissi-

1. "Where, as here, the trial court takes no additional evidence, our scope of review in a zoning appeal is limited to a determination of whether the board of supervisors committed an abuse of discretion or an error of law. An abuse of discretion is established where the findings are not supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Collier Stone Co. v. Township of Collier Board of Commissioners*, 735 A.2d 768, 772 n. 9 (Pa. Cmwlth.1999) (internal citations omitted).

2. The Board stated in finding of fact 21 of its opinion: "The [VOD] is a separate and distinct zoning district in the Township specifically created in 2008 for the heart of Richboro[*]. Its express purpose is to encourage the development and renovation of Richboro[*] as an upscale, pedestrian-friendly village. The VOD was established through simultaneously enacted amendments to the [Ordinance and the SALDO]." *See also* (Board Op., Findings of Fact (F.F.) ¶ 22.); Ordinance, § 140–58.7 (purposes of VOD). *The use of "Richboro" here refers to the

section of the township where the proposed development is located and not the party.

3. Richboro submitted two plans: (1) the C–2 plan is based on the C–2 District requirements only and (2) the VOD plan is based on the VOD requirements. The site is in the VOD section of the C–2 District.

4. In addition to the Board's appearance as an appellee in this matter, a group of individuals and businesses within the Northampton community (Neighbors) have filed a brief as appellees/intervenors. The Neighbors are: Murray and Lynda Battleman, C & B Supermarket, Inc. d/b/a Richboro Shop N Bag, William O'Hara and Mary Rita O'Hara, Douglas E. Meyers and Christine Meyers, Paul J. Scipione and Bridget Scipione, Allan R. Spurr and Bonnie G. Spurr, Mr. Printer, Inc., and Douglas C. Brong d/b/a/ Richboro Optique. Because the Neighbor's arguments in support of the Board's determination and the Trial Court's opinion and order are substantially similar to the Township's, the Neighbors arguments will not be addressed separately.

ble use within a shopping center. The Township argues that the Board and the Trial Court correctly determined that a shopping center containing a supermarket is not a permitted use within the C–2 District, unless the supermarket is developed in the VOD and in accordance with the VOD requirements.[5]

Whether a proposed use falls within a given category of a zoning ordinance is a question of law subject to this Court's plenary review. *Aldridge v. Jackson Township,* 983 A.2d 247, 253 (Pa. Cmwlth.2009); *Tennyson v. Zoning Hearing Board of West Bradford Township,* 952 A.2d 739, 745 (Pa.Cmwlth.2008). Although a municipal legislative body is entitled to deference in its interpretation of the zoning ordinance, it is axiomatic that an undefined term must be interpreted in accordance with the common and approved usage and that any doubt concerning the meaning of an undefined term should be resolved in favor of the landowner and the least restrictive use. *In re Arnold,* 984 A.2d 1, 10 (Pa.Cmwlth.2009)[6]; *Diocese of Altoona–Johnstown v. Zoning Hearing Board of Borough of State College,* 899 A.2d 399, 402 (Pa.Cmwlth.2006); *Pittsburgh Cellular Telephone Co. v. Board of Supervisors of Marshall Township,* 704 A.2d 192, 194 (Pa.Cmwlth.1997). Where possible, an ordinance must be construed to give effect to all of its provisions. *In re Thompson,* 896 A.2d 659, 669 (Pa.Cmwlth. 2006); *Mann v. Lower Makefield Township,* 160 Pa.Cmwlth. 208, 634 A.2d 768, 772 (1993); *Appeal of Neshaminy Auto Villa Ltd.,* 25 Pa.Cmwlth. 129, 358 A.2d 433, 435 (1976); *see also* Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921.

The Ordinance contains a definitions section for terms used throughout the Ordinance, including the term "Shopping Center" which is defined as:

A group of five or more commercial establishments with an aggregate of more than 10,000 square feet of floor area that is planned, managed and operated as a single property with on-site parking. Not less than 60% of the total floor area shall be used for retail stores and outlets, general merchandise stores and personal service uses.

Ordinance § 140–8. In Section 140–20(B)(2)(d) of the Ordinance, a shopping center is listed as a conditional use in the C–2 District.[7] Subsection (B) of Section

---

5. Section 140–20(F) of the VOD provides in subsection (3) that "[u]ses not permitted by right, conditional use or special exception within the underlying C–2 District, but are permitted as a use by right, conditional use or special exception within the C–3, PO or IP Districts, shall be permitted by conditional use within the Village Overlay District," and provides in subsection (5) that "[w]here conflicts between the provisions of the C–2 Zoning District and Village Overlay District exist, the provisions of the Village Overlay District shall apply." Ordinance § 140–20(F)(3), (5).

6. *In re Arnold* was an appeal from the decision of the North Cornwall Township Board of Supervisors to grant a conditional use to construct a Wal–Mart Supercenter and Tire Lube Express store. 984 A.2d at 5. One of the arguments advanced on appeal was that the

ordinance did not permit a "department store" to locate within the C–2 Commercial District and the proposed Wal–Mart was a "department store," rather than a "store for retailing of all consumer goods," which was permitted in the C–2 district under the ordinance at issue. *Id.* at 10. This Court concluded that the North Cornwall Township Board of Supervisors did not err in its interpretation of its ordinance, because the term "department store" was not defined in the ordinance and should, therefore, be interpreted in favor of the least restrictive use, and because of the fact that similar uses abounded in the C–2 district already. *Id.*

7. Section 140(20)(B)(2)(d) of the Ordinance provides: "Shopping center, on a lot of at least five acres, subject to the regulations of

140–20 of the Ordinance also identifies a number of uses by right and these uses do not include the specific use supermarket or the broader use general merchandise stores, but does include specific types of retail stores. Ordinance § 140–20(B)(1).

Richboro argues that because the definition of shopping center includes general merchandise and retail stores and a shopping center is a conditional use within the C–2 District, a supermarket, as a general merchandise or retail store, is permissible as a conditional use within the C–2 District as long as it is within a shopping center. The Township contends that the "retail stores and outlets, general merchandise stores and personal service uses," within a shopping center in the C–2 District must be one of the uses permitted within the C–2 District, such as the retail stores identified as a use by right in Section 140–20(B)(1) of the Ordinance, and a supermarket is not permitted, because it is not listed as a use by right or a conditional use within the C–2 District.

In support of its argument that a supermarket within a shopping center is not a conditional use within the C–2 District, the Township points to Section 140–21 of the Ordinance, which governs the C–3 Planned Commercial District. In Section 140–21(B)(1) a shopping center is permitted by right and in subsection (b) the Ordinance permits: "General merchandise stores, including department stores, specialty clothing shops, supermarkets, lunch counters, delicatessens or restaurants (each meeting the definition of "restaurant")." Ordinance § 140–21(B)(1)(b). The Township contends that if a supermarket was permitted within a shopping center in the C–2 District, it would have been listed as a use

by right as it is in the C–3 District. We agree.

The Ordinance is not ambiguous. The Ordinance clearly prohibits shopping centers containing supermarkets from locating within the C–2 District, unless they are developed as a conditional use in accordance with the VOD requirements. Richboro's contention that a supermarket is permitted as a part of a conditional use shopping center in the C–2 District requires that the portion of the Ordinance governing the C–2 District, Section 140–20, be read in isolation. However, when the Ordinance is examined as a whole, it is clear from the text that while Section 140–20(B)(2)(d) does allow shopping centers in the C–2 District as a conditional use, the uses that are permitted within the shopping center are limited and do not include the broader use general merchandise store or the specific use supermarket. As provided in Section 140–21(B)(1)(b), shopping centers containing general merchandise stores, including supermarkets, are permitted in the C–3 District.

Furthermore, the purpose of the C–2 District and the current development within the Township align with our conclusion. The purpose of the C–2 District as stated in the Ordinance is:

Specific purpose. The C–2 General Commercial/Office District is intended to provide convenient pedestrian-oriented facilities and personal service needs of local residents. It is the specific intention of the Township to limit the locations of such district and to prevent unwarranted expansion of strip-type commercial development along the Township's major streets and highways.

§ 140–21C(3) through (5), (10) and (11). The foregoing regulations shall apply in addition to all other applicable standards set forth in the Zoning Ordinance. [Added 9–22–2004 by

Ord. No. 497]." The regulations in Section 140–21(C)(3)–(5), (10), and (11) are area and use regulations.

Ordinance § 140–20(A). The focus on pedestrian-oriented facilities and the stated intention to limit strip-type commercial development directly contrasts with the purpose of the C–3 District, which includes, "to provide for a carefully designed community shopping center meeting the commercial needs of the residents of Northampton Township." Ordinance § 140–21(A). The differing purposes of the two districts and the intent to limit the type of commercial development permissible in the C–2 District, while allowing more expansive commercial development within the C–3 District, is reflected in the fact that no supermarkets are currently located within the C–2 District and that each of the existing supermarkets are located within shopping centers in the C–3 District. (Board Op., F.F. ¶¶ 177–178.)

Accordingly, neither the Board nor the Trial Court erred in concluding that a supermarket is not a permitted use in a shopping center located within a C–2 District, unless the shopping center is also located within the VOD and developed in accordance with the VOD requirements.

## II.

 In addition to the plan Richboro submitted based on its conclusion that the Ordinance permitted a supermarket to be located within a shopping center in the C–2 District, Richboro submitted a VOD plan. The VOD was created in 2008 through simultaneously enacted amendments to the Ordinance and the SALDO in order to encourage the development and renovation of the center of Northampton as an upscale, pedestrian-friendly village. (Board Op., F.F. ¶ 21); Ordinance No. 535; SALDO No. 536. There is no dispute that under the Ordinance, uses permitted by right and as a conditional use within the C–3 District, including a supermarket within a shopping center, shall be permit-

ted by conditional use within the VOD. Ordinance § 140–20(F)(3). As a part of the conditional use application, the Ordinance requires that an applicant submit "appropriate design plans and/or specifications, in conformance with the requirements for a preliminary land development plan." Ordinance § 140–38(A)(1). The requirements for a preliminary land development plan are provided by the SALDO.

 Conditional use approval varies on a case by case basis, turning on the use requested and the language of the particular ordinance at issue. In *In re Thompson*, 896 A.2d 659 (Pa.Cmwlth. 2006), this Court discussed what a township may and may not require a conditional use applicant to demonstrate at this crucial first step of the land development stage. Addressing the difference between use of land, which was a proper inquiry at the conditional use stage, and the particulars of development and construction, which was not, this Court identified a series of examples of the difference, stating: "[w]hat we garner from these cases is that an applicant seeking conditional use approval must demonstrate compliance with the express standards and criteria of an ordinance that relate specifically to the conditional use." 896 A.2d at 671. Therefore, the standard applied to conditional use applications is whether the plan submitted complies with all zoning requirements; an applicant is not required to present particular details of the design of the proposed development at the conditional use stage, however, an intention or promise to comply with all zoning requirements is insufficient to show entitlement to a conditional use. *Marquise Investments, Inc. v. City of Pittsburgh*, 11 A.3d 607, 613 (Pa.Cmwlth.2010); *K. Hovnanian Pennsylvania Acquisitions, LLC*, 954 A.2d at 725; *Aldrige*, 983 A.2d at 259; *Susquehanna Township*, 430 A.2d at 368–69; *see also*

Section 603 of the MPC, 53 P.S. § 10603. Richboro contends that requiring it to submit details of the design of its proposed development is just what the Board did here when it concluded that Richboro's VOD plan must comply with provisions of the SALDO in order to obtain conditional use approval.

Richboro argues that the action of the Board is analogous to *In re Drumore Crossings, L.P.,* 984 A.2d 589 (Pa.Cmwlth. 2009), wherein this Court held that where the ordinance at issue stated only that an applicant must demonstrate it will use an "approved means" of sewage treatment, it was error to require an applicant at the conditional use stage to identity the specific sewage treatment system it would employ and demonstrate that this specific system would be approved by the Department of Environmental Protection (DEP). *Id.,* at 598–596. This Court concluded that at the preliminary stage of a conditional use application, the ordinance required only that the applicant identify a method of sewage treatment and that this method was approved by DEP. *Id.* The Board's conclusion here is, however, quite antithetical to the conclusion held to be in error in *Drumore Crossing.*

▆▆ The issue in *Drumore Crossing* was the level of detail the applicant was asked to provide at the preliminary conditional use stage and the error was requiring detail that went far beyond the zoning ordinance requirements for the use of land

and reached into the mechanics and operation of that use. *See also Appeal of Brickstone Realty,* 789 A.2d 333, 340 (Pa. Cmwlth.2001) (applicant was required to provide nature, size, and location of proposal, but it was unreasonable to require floor plans for the proposed buildings); *East Manchester Township Zoning Hearing Board v. Dallmeyer,* 147 Pa.Cmwlth. 671, 609 A.2d 604, 607–609 (1992) (where ordinance contains requirements relating to continued supply of potable water, it is proper to consider compliance as a part of application for special exception); *Bray v. Zoning Board of Adjustment,* 48 Pa. Cmwlth. 523, 410 A.2d 909, 911 (1980) (classifying use of land for purposes of a special exception as including area, bulk, parking, and setbacks). Here, the detail Richboro was required to provide in its VOD plan directly related to its use of the land, such as the location of the building and the off-street parking. SALDO § 118–42(A)(3)(a), (A)(3)(c), (A)(5)(b). While Richboro cannot be required to submit a plan that details compliance with every aspect of the SALDO in order to obtain conditional use approval, Richboro cannot obtain conditional use approval with a VOD plan that makes compliance with the SALDO impossible and is directly at odds with the express criteria set forth in the Ordinance.[8] *See* Section 603(c)(2) of the MPC, 53 P.S. § 10603(c)(2) ("provisions for conditional uses to be allowed or denied by the governing body after recom-

8. For example, the SALDO provisions applicable to the VOD include a requirement that "[t]he color, brightness and appearance of the exterior walls of the principal buildings and accessory structures shall be compatible with the design theme and architectural style. The selected color shall have a low reflectance level and the trim colors shall complement the color of the exterior walls." SALDO § 118–42(A)(2)(g). At the conditional use stage, this provision does not mean that in order to demonstrate conformance with a

preliminary land development plan, and in the case of the VOD compliance with the SALDO VOD design requirements, the applicant must identify the specific paint it will use. Rather, an applicant must demonstrate the ability to comply. *See Schatz v. New Britain Township Zoning Hearing Board of Adjustment,* 141 Pa.Cmwlth. 525, 596 A.2d 294, 298 (1991) (conditional use applications involve only the use of land and do not involve the details of the design of the proposed development).

mendations by the planning agency and hearing, pursuant to express standards and criteria set forth in the zoning ordinance...."). Under this Ordinance, an applicant for a conditional use in the VOD must demonstrate that its plan complies with the applicable sections of the SALDO and the conditional use application may be denied if it does not comply. *K. Hovnanian Pennsylvania Acquisitions*, 954 A.2d at 726

Because Richboro's VOD plan failed to comply with specific objective requirements mandated by the Ordinance, the Board did not err in rejecting its application for a conditional use in the VOD.

### III.

Next, Richboro argues that the Board erred in calculating the maximum impervious surface coverage permitted under the Ordinance. The Ordinance defines a "site" as "[a] parcel or parcels of land being considered or to be considered for subdivision or land development purposes or for purposes of zoning, upon which one or more buildings are intended." Ordinance § 140–8. The property Richboro seeks to develop is a site for purposes of calculating the permissible impervious surface coverage. This calculation is made under the Ordinance using the "impervious surface ratio," which is defined as: "[a] measure of the intensity of use of a parcel of land. It is measured by dividing the total area of all impervious surfaces within

the site by the net site area." [9] Ordinance § 140–8. The net site area here is 10.53 acres.[10] The Ordinance does not have a specific provision addressing split-zoned sites, such as the site here, which has a portion located in the R–2 District and a larger portion located in the VOD section of the C–2 District. However, under the Ordinance, each district has a limitation placed upon the amount of impervious surface coverage permitted.

Within the VOD section of the C–2 District, the permissible impervious surface coverage for shopping centers is calculated using the maximum impervious surface coverage applicable to development within the C–3 District or 70%. *See* Ordinance §§ 140–20(B)(2)(D), 140–21(C)(5). In the R–2 District, the maximum permitted impervious surface coverage is: (i) 20% for single-family detached dwellings, group homes or community residential facilities; (ii) 25% for cluster design subdivisions allowed as a conditional use; and (iii) 12% for all other permitted uses. *See* Ordinance §§ 140–15(A)(2)(b), 140–15(B)(1)(e), 140–15(B)(2)(c), 140–39(D)(2).

Based on the definitions contained in the Ordinance and the provisions addressing the maximum permitted impervious surface coverage, the Board reached two conclusions that Richboro contends constituted errors of law.

Initially, the Board determined that because the site is split-zoned, a reasonable

---

9. Both "Site Area" and "Site Area, Net" are defined in Section 140–8. "Site Area" is defined as "[a]ll land area within the site as defined in the deed or deeds. Actual area shall be from a survey rather than from a deed description. Site area shall not include any previously dedicated public right-of-way." Ordinance § 140–8. "Site Area, Net" is defined as "[t]he site area less the area of any existing streets." *Id.*

10. The gross site area is 11.548 acres overall, with 7.31 acres located in the VOD section of the C–2 District and 4.235 acres located in the R–2 District. (Board Op., F.F. ¶¶ 3, 19–20.) The net site area is 10.5329 acres overall, with 6.2977 acres located in the VOD section of the C–2 District and 4.2352 acres located in the R–2 District. (Board Op., F.F. ¶¶ 33–35, 164–165, Discussion at 38.) Although Richboro disputes the methodology, it does not dispute the actual numbers used in the Board's calculation.

interpretation of the Ordinance, favoring the least restrictive use, allows the impervious surface coverage permitted in the R–2 District to be blended with the impervious surface coverage permitted in the C–2 District to arrive at the permissible impervious surface coverage for the site as a whole. The Board drew upon *Appeal of Baldwin School,* 932 A.2d 291 (Pa.Cmwlth. 2007), which it concluded established that, in absence of an ordinance provision addressing the matter, it was reasonable to blend or add the impervious surface limits of each district of a split-zoned site and then to apply the new limit across the site as a whole, rather than to calculate and apply each limit separately within each individual district.[11] *Id.* at 298–300.

Richboro argues that rather than blending, the permissible impervious surface coverage should be calculated using the net site area of the property as a whole, and that because all the proposed improvements to the site are located in the C–2 District, the 70% maximum permitted impervious surface coverage for the C–2 District should be used to calculate the maximum for the entire site. Under Richboro's calculation the maximum permissible impervious surface coverage should be 7.371 acres or 70% of 10.53 acres.

The Township contends that Richboro's interpretation of the Ordinance, allowing 70% to be used across both Districts, runs counter to the intent of the Ordinance, which clearly specifies two different limitations on the permissible amount of imper-

vious surface coverage based on the two very different uses permitted in each District. The Township argues that by blending the permissible impervious surface area from each District together, the Board was interpreting the Ordinance in favor of Richboro and the least restrictive use, because it allowed Richboro to concentrate the impervious surface area in the C–2 District and the area through which water could percolate in the R–2 District, while remaining true to the overall limits in the Ordinance. Under this calculation, the percentage of the maximum permitted impervious surface coverage of the net site area located in the R–2 District, 4.2352 acres, is calculated and then the percentage of the net site area located in the C–2 District, 6.2977 acres, is calculated, and the total of the two individual calculations is the permissible impervious surface coverage for the site as a whole.

 We agree with the Board that, where an ordinance places limits on the impervious surface coverage allowed in a given zoning district and does not have a provision addressing how to apply those limits to a split-zoned site, it is reasonable to blend the limits together and apply the total to the site as a whole, and that such an interpretation resolves any ambiguity in favor of the land-owner and the least restrictive use. In contrast, Richboro's interpretation would allow the permissive regulations of a less restricted district to displace the careful limits of a more constrained district anytime a single site con-

---

**11.** The Lower Merion ordinance at issue in *Appeal of Baldwin School* had a boundary tolerance provision applicable to split-zoned properties, whereby the least restrictive district could be extended a certain yardage into the more restrictive district when a single site fell within two districts. *Id.* at 298. The objectors argued that the boundary tolerance provision should not apply, because the structures creating impervious coverage were only

going to be constructed on the portion of the site located in the more restrictive district. *Id.* This Court, recognizing the dearth of authority addressing the issue, concluded that it was reasonable to apply the extension, determine the percentage of impervious coverage permitted in each zone, and then blend them together to arrive at the percentage of impervious coverage permitted for the entire site. *Id.* at 299–300.

tains land that falls within both; this interpretation would create more impervious surface than is intended by the express language of the ordinance and more than what would be permitted if each portion were developed as a separate site.

Richboro next argues that, even if the use of blending was reasonable, the Board erred when it determined that the percentage of impervious surface coverage applicable to "all other permitted uses," or 12%, was the appropriate permissible coverage limitation for the portion of the site located within the R–2 District because a shopping center is not a permitted use within the R–2 District. Ordinance § 140–15(b)(2)(c). Richboro contends that the 20% impervious surface coverage allowed for "single-family detached dwellings, group homes or community residential facilities," or the 25% allowed for "cluster design subdivisions as a conditional use," should be used, because a supermarket is not a permitted use in the R–2 District and therefore cannot be an "other permitted use." Ordinance §§ 140–15(A)(2)(b), 140–15(B)(1)(e), 140–15(B)(2)(c), 140–39(D)(2).

The Township argues that the 12% maximum is appropriate here because the other percentages are clearly tied to residential use and the proposed shopping center is not residential. It further contends that the Board interpreted the Ordinance in a manner favorable to Richboro even where the Ordinance was not ambiguous by permitting Richboro to borrow the allowable impervious surface area from the R–2 District for a use that is not permitted in that district.[12]

We agree that 12% of the R–2 District net site area of 4.2352 acres, or 0.5082 acres, was a reasonable interpretation of the maximum impervious surface area permitted under the Ordinance and the Board did not err in applying it to the R–2 District portion of the site. As both parties readily admit, a shopping center is not a permitted use in the R–2 District. However, the Board has interpreted the Ordinance here to allow a section of the R–2 District to be used as a part of the development of a shopping center in the VOD portion of the C–2 District where the actual improvements were concentrated in the C–2 District. Allowing the portion of the site in the R–2 District to be used in this way does not change the nature of the use of the site as a whole; it is commercial, not

12. Under the calculation used by the Board and advocated for by the Township, the permissible impervious surface area would be as follows:

| District | Net Site Area | % Impervious | Maximum |
| --- | --- | --- | --- |
| R–2 District | 4.2352 acres | 12 | 0.5082 acres |
| C–2 District | 6.2977 acres | 70 | 4.408 acres |

Total impervious surface area permitted: 4.91639 acres

Under the alternate calculation argued for by Richboro, the permissible impervious surface area would be as follows:

| District | Net Site Area | % Impervious | Maximum |
| --- | --- | --- | --- |
| R–2 District | 4.2352 acres | 20 | 0.84704 acres |
| R–2 District | 4.2352 acres | 25 | 1.0588 |
| C–2 District | 6.2977 acres | 70 | 4.408 acres |

Total impervious surface area permitted (using 20%): 5.25504 acres

Total impervious surface area permitted (using 25%): 5.4668 acres

residential. The 20% and 25% maximum permitted impervious surface area applied in the R–2 District are for residential uses. The 12% is specified for all other permitted uses. Richboro's intended use of this land was for commercial and not residential purposes, and therefore, if permitted to go forward by the Board, it is reasonable to apply the only percentage not expressly restricted to residential use or the percentage for an "other permitted use."

Accordingly, the Board did not err in concluding that each of the plans submitted by Richboro exceeded the permissible amount of impervious surface coverage.

### IV.

■ Finally, Richboro argues that the Board and the Trial Court erred in concluding that even if Richboro had carried its burden of demonstrating that its application complied with the objective standards and criteria of the Ordinance, the application would still be denied because the traffic impact of the proposed shopping center would be detrimental to the public health, safety, and welfare of the community. The Township contends that the record contains the evidence necessary to support a determination that the traffic impact would be detrimental to the community if the conditional use application were approved.

■ In order to deny a conditional use based upon the high degree of probability that the traffic impact will pose a substantial threat to the community, objectors have a high burden. Objectors must demonstrate that the conditional use will generate traffic patterns not normally generated by other permitted uses and that this abnormal traffic pattern will pose a substantial threat to the health, safety, and

welfare of the community. *Joseph v. North Whitehall Township Board of Supervisors,* 16 A.3d at 1217; *Borough of Perkasie v. Moulton Builders, Inc.,* 850 A.2d 778, 782 (Pa.Cmwlth.2004); *Appeal of Brickstone Realty,* 789 A.2d 333, 341–342 (Pa.Cmwlth.2001).

The Ordinance contains two subsections that address the role an analysis of traffic impact has in conditional use proceedings. First, the Ordinance requires that in determining whether to grant or deny conditional use approval, the Board shall consider "[t]he potential physical impact of the proposed use upon the neighborhood and upon nearby streets, roads, and highways in terms of vehicular traffic and pedestrian safety." Ordinance § 140–37(C)(5). Second, the Ordinance states that as a part of approval, "the Board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of the [MPC] and this chapter." Ordinance § 140–37(D). Among the conditions specified is the commission of "[s]pecific studies prior to or subsequent to approval of the use or uses, including but not limited to traffic impact analyses . . ." Ordinance § 140–37(D)(2).

■ Richboro, the Township, and the Neighbors each offered expert testimony addressing the traffic impact of the proposed development; Richboro presented the testimony of James Dimmerling, the Township presented the testimony of Joseph J. DeSantis, and the Neighbors presented the testimony of Peter A. Terry. The Board did not find the testimony of Mr. Dimmerling to be credible, but did credit the testimony of Mr. DeSantis and Mr. Terry. (Board Op., Discussion at 45–49.) In conditional use proceedings where the trial court has taken no additional evidence, the Board is the finder of fact,

---

Each of the plans submitted by Richboro contains more than 4.91639 acres in impervious

empowered to judge the credibility of witnesses and the weight afforded to their testimony; a court may not substitute its interpretation of the evidence for that of the Board. *Tennyson v. Zoning Hearing Board of West Bradford Township*, 952 A.2d 739, 743 n. 5 (Pa.Cmwlth.2008); *In re Cutler Group, Inc.*, 880 A.2d 39, 46 (Pa. Cmwlth.2005).

The Board's conclusion that the conditional use would be detrimental to the health, safety, and welfare of the community was based on the traffic impact studies and testimony of Mr. DeSantis and Mr. Terry that credibly demonstrated that the proposed development would create significant congestion, turning delay, and increased the lengths at existing major intersections. (*See* Board Op., F.F. ¶¶ 93–97, 125–128, 134–137, 139–141, 155–156.) In addition, both experts credibly demonstrated that the mitigation efforts suggested by Mr. Dimmerling would either cause more problems or were dependent upon future action taken by the Pennsylvania Department of Transportation in response to construction of the proposed development that was speculative at best. (*See* Board Op., F.F. ¶¶ 98, 101–102, 129–130, 138, 142, 156–157.) Most disconcertingly, one of the "improvements" suggested by Mr. Dimmerling to alleviate the traffic impact, converting the northbound inside land on Second Street Pike to a continuous northbound/ southbound center left-turn lane from Bustelton Pike to Almhouse Road, was cogently described by the Board, based on the evidence of record, as creating "a reckless danger to the driving public," and a "'Suicide Lane' since it would encourage dangerous head-on vehicle movements...." (Board Op., Discussion at 45–46, *see also* F.F. ¶¶ 130–138.)

The report and testimony of Mr. DeSantis also showed that the traffic impact created by the development was not a result of any development of the site, but due to the particular conditional use sought by Richboro, which would have an abnormal impact. Mr. DeSantis compared the impact of a stand-alone supermarket with four small retail uses and a traditional shopping center, and found that a traditional shopping center would generate significantly fewer trips per day, more internal trips, and a higher level of service on the surrounding roadways. (*See* Board Op., F.F. ¶¶ 143–154.) Contrary to Richboro's argument, the evidence here is exactly the type and quality of evidence required to satisfy the high burden a party must carry to demonstrate that the traffic impact of a conditional use is detrimental to the community.

Unlike the findings this Court found lacking in *Appeal of Brickstone Realty*, the Board did not base its conclusion on lay opinion, speculative threats of congestion, or irrelevant roadways as Richboro argues. 789 A.2d at 340–341. Accordingly, the Board's conclusion that its grant of a conditional use to construct Richboro's proposed development would be detrimental to the health, safety, and welfare of the community due to the resulting traffic impact is supported by substantial evidence.

**V.**

In sum, we hold that the Board and the Trial Court did not err or abuse their discretion in rejecting Richboro's application for a conditional use, as: supermarkets are not permitted in the C–2 District, unless they are located within the VOD and developed in accordance with the VOD requirements; the VOD plan submitted by Richboro failed to satisfy the applicable SALDO provisions; the proposed development exceeded the maximum permitted

surface area. (Board Op., Discussion at 38.)

impervious surface coverage; and, even if Richboro had carried its initial burden by complying with the express criteria set forth in the Ordinance for a conditional use, substantial evidence demonstrated that the proposed development would have a detrimental impact on the public health, safety, and welfare of the community.

Accordingly, the order of the Trial Court is affirmed.

Judge COHN JUBELIRER did not participate in the decision of this case.

## ORDER

AND NOW this 8th day of April, 2014, the order of the Court of Common Pleas of Bucks County in the above-captioned matter affirming the decision and order of the Board of Supervisors of Northampton Township denying the application of Richboro CD Partners, L.P., for a conditional use is AFFIRMED.