# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mar-Del Holdings, LLC, :
: No. 1228 C.D. 2015
                    Appellant : Argued: March 7, 2016
:
          v. :
:
Orange Township Board of Supervisors :
:
          v. :
:
Mark Acker, Donna Acker, Morgan :
Barclay, Mary Barclay, Steve Beyer, :
Cindy Beyer, Patricia Brewster, Robert :
Brewster, Fred Brockway, Jan Brockway, :
Marty Chamberlain, Gail Chamberlain, :
John J. D'Orazio, Barbara D'Orazio, :
John D'Orazio, Pam D'Orazio, Susan B. :
Fetterman, Dan Fetterman, Nathaniel :
Flook, Sherry Flook, Charles Fritz, :
Jennifer Fritz, Susan Hales, Gary Hess, :
Penny Hess, Corey Hughes, Madeleine :
Hughes, Ronald Hunter, Janet Hunter, :
John Katch, Jennifer Thomas, George :
Larson, Nancy Larson, Jayleen Miller, :
Eric Ortuba, Amanda Ortuba, Larry :
Recla, Carrie Recla, Anthony Reed, :
Cathy Reed, Gregory Sherman, Joyce :
Sherman, Andrew Smith, Christine Smith, :
Eric Sorg, Erin Sorg, and Matthew :
Swinehart :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                     FILED: May12, 2016

Mar-Del Holdings, LLC (Landowner) appeals the order of the Court of Common Pleas of the 26th Judicial District (Columbia County Branch) (trial court) affirming the Orange Township (Township) Board of Supervisors' (Board) decision that denied Landowner's conditional use application[1] to construct a

---

[1] Section 603(c)(2) of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10603(c)(2) states, in relevant part:

> Zoning ordinances may contain . . . provisions for conditional uses to be allowed or denied by the governing body . . . pursuant to express standards and criteria set forth in the zoning ordinance. . . . In allowing a conditional use, the governing body may attach such reasonable conditions and safeguards . . . in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act and the zoning ordinance[.]

*See also* Section 909.1(b)(3) of the MPC, added by the Act of December 21, 1988, *as amended*, 10909.1(b)(3) ("The governing body . . . shall have exclusive jurisdiction to hear and render final adjudications . . . [on a]pplications for conditional use under the express provisions of the zoning ordinance pursuant to section 603(c)(2)."); Section 913.2(a), added by the Act of December 21, 1988, *as amended*, 53 P.S. §10913.2(a) ("Where a governing body, in zoning ordinances, has stated conditional uses to be granted or denied by the governing body pursuant to express standards and criteria, the governing body shall hold hearings on and decide requests for such conditional uses in accordance with such standards and criteria. . . . In granting a conditional use, the governing body may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act in the zoning ordinance.").

As this Court has explained:

> A conditional use is a special exception which falls within the jurisdiction of the municipal legislative body rather than the zoning hearing board. The municipal legislative body may grant a conditional use pursuant to express standards and criteria set forth in the zoning ordinances enacted pursuant to the police powers to regulate land use. The fact that a use is permitted as a conditional use, rather than prohibited, reflects a legislative decision that the use is not *per se* adverse to the public interest.

**(Footnote continued on next page…)**

campground and recreational vehicle (RV) park[2] on its property in the Township's Rural zoning district. We affirm.

In November 2014, Landowner filed a conditional use application[3] with the Board to construct a campground and RV park on its 13-acre parcel of

_____

**(continued…)**

> In order to demonstrate that the applicant is entitled to the conditional use, the applicant initially bears the burden of establishing that the application complies with the objective standards and criteria of the particular ordinance. Satisfaction of the applicant's burden establishes a legislative presumption that the use is consistent with the health, safety, and welfare of the community. Once the applicant has satisfied this initial burden, the burden shifts to the objectors to rebut this presumption by establishing that the use will have a detrimental impact on the surrounding community.

*In re Richboro CD Partners, L.P.*, 89 A.3d 742, 745 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014) (citations omitted).

[2] Section 3.300 of the Zoning Ordinance defines "Campground or Recreational Vehicle (RA) Park" as "[a] plot of ground upon which two or more campsites are located, established or maintained for temporary occupancy by persons using tents or recreational vehicles, and which shall not be used for long term occupancy or residency of occupants."

[3] Section 1108.4 of the Zoning Ordinance sets forth the standards and criteria required for the grant of a conditional use:

> A. The proposed use shall be in harmony with [the] purposes, goals, objectives and standards of the Township Comprehensive Plan, this Ordinance and all other ordinances of the Township.
>
> B. The proposal shall also be evaluated as to the degree to which the proposed location may be particularly suitable or unsuitable for the proposed use in terms of the physical characteristics of the site.
>
> C. The proposed use at the proposed location shall not result in a substantial or undue adverse effect on adjacent property, the

**(Footnote continued on next page…)**

2

character of the neighborhood, traffic conditions, parking, public improvements, public sites or rights-of-way, adjacent property values, or other matters affecting the public health, safety, and general welfare, either as they now exist or as they may in the future be developed as a result of the implementation of this Ordinance, or any other plan, program, map or ordinance of the Township.

D. In reviewing an application, the following additional factors shall be considered:

\* \* \*

5. Adequacy of storm water and drainage facilities [and] storm water leaving any site shall not exceed pre-development levels and facilities shall be designed to accommodate a 10 year storm.

6. Adequacy of water supply and sewage disposal facilities.

\* \* \*

9. Special attention to the adequacy and impact of structures, roadways and landscaping in areas with susceptibility to ponding, flooding and/or erosion.

E. No application shall be approved unless it is found that, in addition to complying with each of the standards enumerated above, any of the applicable standards contained in this Ordinance shall be met.

The applicant shall supply evidence regarding compliance with the express standards and criteria contained herein; and data or evidence may be accepted from protestants. Such evidence shall be evaluated relative to the injurious impact on the health, safety and welfare of the Township; and the proposed use shall be approved with appropriate conditions or denied based on said evaluation.

property in the Township's Rural zoning district. Section 404.4 of the Township's Zoning Ordinance permits such a use in the zoning district as a conditional use. The main entrance to the park would be on Mount Pleasant Road directly across from Sandy Stone Drive. A private road with a 20-foot cartway would be constructed of stone.

Landowner intends to construct an RV park consisting of 100 units, each located on a 50' by 80' pad. The pads would be constructed of stone with a 10' by 20' concrete slab.[4] Some of the units would be in the floodplain and the remainder would be in the floodway.[5] There would be a well drilled and water

---

[4] Section 3.300 of the Zoning Ordinance defines "construction" as "[t]he construction . . . of a building or structure . . . ." Section 1207 defines "development" as "[a]ny man-made change to improved or unimproved real estate, including but not limited to the construction . . . of buildings or other structures . . . ," and defines a "structure" as "[a]nything constructed or erected on the ground or attached to the ground including, but not limited to buildings, sheds, manufactured homes, and other similar items." Section 3.300 defines a "structure" as "[a] combination of materials to form a construction for use . . . whether installed on, above, or below the surface of land or water," and a "permanent structure" as "[a]nything constructed, the use of which requires permanent location on the ground . . . ." In light of the foregoing definitions, the installation of the instant concrete slabs constitutes "construction," "development," and "structure" under the terms of the Zoning Ordinance. *See, e.g., H.Y.K. Construction Company v. Zoning Hearing Board of Perkiomen Township*, (Pa. Cmwlth, No. 1191 C.D. 2004, filed March 18, 2005), slip op. at 6 ("Applying that definition here, these slabs will be mixed and poured onto the ground and will become permanently attached thereto for the purpose of storing HYK's pre-cast concrete materials in conjunction with its business. Accordingly, the concrete slabs at issue in this case fall well within the definition of a 'structure' under the Zoning Ordinance . . . .").

[5] Section 1201.1.C., and D. of the Zoning Ordinance provides that the Floodplain Development Standards are to "[m]inimize danger to the public health by protecting [the] water supply and natural drainage" and "[r]educe financial burdens imposed on the community, its governmental units, and its residents, by preventing excessive development in areas subject to flooding." Section 1201.2 states that "[i]t shall be unlawful for any person . . . or corporation to undertake, or cause to be undertaken, any construction or development anywhere within an identified floodplain area in the Township unless a permit has been issued by the Township in accord with this Ordinance." Section 1202.1 states that "[p]ermits shall be required before any construction or development is undertaken within any identified floodplain area in the **(Footnote continued on next page…)**

provided to each unit. Each unit would also have a sanitary sewer hookup that would be attached to the plant owned by Landowner. Based on a conversation between Landowner and the plant operator, the sewer plant has sufficient capacity

_____

**(continued…)**

Township." Section 1202.2 provides that a permit can only be issued "after it has been determined that the proposed work . . . will be in conformance with the requirements of this and all other applicable codes and ordinances," and that no permit shall be issued until it has been determined that "all other necessary government permits required by State and Federal laws have been obtained." Likewise, Section 1204.1.B. states that "[w]ithin any designated floodway (FW) area, no new construction, development, use, activity, or encroachment of any kind, shall be allowed, except where the effect of such proposed activity on flood heights is fully offset by accompanying improvements," and that "[n]o new construction or development shall be allowed unless a permit is obtained from the Department of Environmental Protection [(DEP)], Bureau of Dams and Waterways Management [(Bureau)]."

With respect to sanitary sewer facilities within the floodplain area, Section 1204.3.C. states:

> 1. All new or replacement sanitary sewer facilities and systems, and private package sewage treatment plants (including all pumping stations and collections systems), shall be located, designed and constructed to minimize or eliminate flood damages and the infiltration of flood waters into the systems and discharges from the systems into flood waters.

> 2. No part of any on-site sewage system shall be located within any floodplain area except in strict compliance with all state and local regulations for such systems. If any such system is permitted, it shall be located so as to avoid impairment to it, or contamination from it, during a flood.

Similarly, Section 1204.3.M. provides that "[w]ater supply systems and sanitary sewage systems shall be designed to prevent the infiltration of flood waters into the system and discharges from the system into flood waters."

5

to process the sewage from the proposed RV park.[6]  All of the utilities would be placed underground.

---

[6] The entirety of Landowner's evidence regarding sewage facilities for the development presented to the Board at hearing is as follows:  Landowner's principal stated, in pertinent part:

> There will be provided sanitary sewer.  Every unit will have a sanitary sewer hookup, which will be – which will go to our plant, we own the plant, here in [the] Township to be treated . . . .
>
> We will have to wait until we get planning approval as far as getting into the details about the design of the sewer line . . . .
>
> [Board Chairman]:  Question on the sewage.  You've actually reviewed that with the operators of the sewer plant to ensure that sewer plant is adequate to support this number of units?
>
> [Principal]:  I discussed that with John.
>
> [Board Chairman]:  And what was his response?
>
> [Principal]:  He said that we were – that we were set up so that the material and so forth coming from this site will be regulated over a period of time to go to the plant to be treated.
>
> [Board Chairman]:  Okay.  And we have documentation for that?
>
> [Principal]:  No, that was verbal from him.  The only thing I have from the township is he told me they have – he asked me a question on whether we had enough capacity for the sewer and I said I had talked to the sewer enforcement officer for the township, and he had said it can work in that plant.  There's enough, yes.

Reproduced Record (R.R.) at 32a-35a.

Additionally, Landowner's surveyor stated, in relevant part:

> I'm a professional land surveyor.  Part of my job would be to complete the land development process through the Columbia

**(Footnote continued on next page…)**

6

**(continued…)**

County Planning Commission [(Planning Commission)]. So the reality of it right now is you're looking at a sketch, but we are going to have to go through a very detailed process with the [Planning Commission] that is basically going to look at every grade.

Every site there's certain things we have to have for each site. A gravel pad. Each site has to be fifty by eighty I believe under the county's ordinance. They have fairly restrictive campground requirements in their ordinance. And so this is like part one of a long process.

The problem we have is if we don't – if he doesn't get a conditional use approval then we can't really start the planning process, so it doesn't make sense obviously to do that without a conditional use. So that's – this is step one of a long drawn out process.

Sewer, you asked the question on sewer. We would have to do what's called a sewage facilities planning module. Part of that planning module is we need a letter from the bureau stating that they have adequate capacity. If they don't, we don't get approval. Correct? Or at least for that many units.

[Principal]: Doesn't have to do with the bureau. That has to do with –

[Surveyor]: Well, whoever's servicing the sewer. If the capacity's not there we can't do it. And DEP will have to approve the module stating that there is capacity and then we can do it.

[Principal]: But until we – until this township does something about going to the Borough of Orangeville, our material will all be put into the plant and treated at that plant.

*Id.* at 36a-37a.

Thirty individuals from adjacent residential developments and neighbors (collectively, Objectors) appeared at the Board hearing and testified regarding their concerns with the proposed development. As found by the Board:

> The neighbors' concerns included the large influx of people from the sites wandering around the neighborhood, security in the neighborhood, noise, increased vehicular traffic, smoke from 80 to 100 campfires, changes in the character of the neighborhood, the increase in the cost of the sewer plant from additional sewage, questions regarding the capacity of the sewage plant to handle the additional sewage, what type of debris would be carried downstream by a flood, the property is in the floodway and floodplain, the devaluation of neighboring properties, safety issues, concerns for the children in the area, strain on the wells, the degradation of the tax base from residents moving away, noise pollution, environmental impact to vegetation and wildlife, the bus stop directly across from the entrance to the property, litter and all-terrain vehicle noise.

R.R. at 14a. Based on its findings, the Board concluded that "[t]he testimony and evidence of [Landowner] was not sufficient to meet the standards and criteria for a conditional use in the Rural Zone pursuant to section 1108.4 of the [Township] Zoning Ordinance." *Id.*

Landowner appealed to the trial court and Objectors intervened. Without receiving additional evidence, the trial court affirmed the Board's decision based on the Board's findings regarding the insufficiency of Landowner's evidence regarding the Ordinance requirements for sewage disposal and development in the floodplain.[7] Landowner then filed this appeal arguing that the Board erred in

---

[7] The trial court explained:

> The . . . decision to deny the application was based on a number of factual findings by th[e] Board. In this opinion,

**(Footnote continued on next page…)**

denying its conditional use application because it sustained its burden of compliance with the specific objective criteria of the Zoning ordinance. We do not agree.[8]

As this Court has explained:

---

**(continued…)**

> however, only two such findings will be addressed: sewage disposal and flood plain. This is not to say that the other factors are not relevant, or that there was no substantial evidence to support the findings. Rather, the sewage disposal and flood plain issues are so fundamental that the remaining issues are minor in comparison.
>
> The proposed use would involve the potential for several hundred people to be occupying the campground during its peak season. Sewage disposal, therefore, is critical. [Landowner] submitted no documentation as to its plan for sewage disposal. Rather, Landowner's representative indicated that he had verbal assurance that the local sewage treatment plant had sufficient capacity. Although this failure may be correctible in a future resubmitted application, the Board was certainly justified in insisting on some assurance more trustworthy than glib hearsay.
>
> As noted above, the proposed campground is in the floodplain and partly in the floodway. Section 1201.2 of the zoning ordinance requires that any proposed use or development in a floodway will not be allowed "unless a permit is obtained from the [DEP's Bureau]." There was no evidence that such a permit was obtained, or even applied for.

R.R. at 179a-180a.

[8] In a land use appeal where the trial court does not take additional evidence, our review is limited to determining whether the local governing body abused its discretion or committed an error of law. *In re Thompson*, 896 A.2d 659, 666 n. 4 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 636 (Pa. 2007). The governing body abuses its discretion when its findings of fact are not supported by substantial evidence. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).

9

Ordinarily, many of the types of detail required for a special exception by the Ordinance here are addressed further along the permitting and approval process because zoning only regulates the use of land and not the particulars of development and construction.[9] But where more stringent requirements are part of a township's special exception requirements, it is proper for the [Board] to consider them. Even if an applicant demonstrates that it can comply with the ordinance requirements and promises to do so, the [Board] does not err in denying the application. Simply put, a concept plan is insufficient to warrant the granting of a special exception; rather, to be entitled to receive a special exception, the applicant must come forward with evidence detailing its compliance with the necessary requirements.

*Elizabethtown/Mt. Joy Associates, L.P. v. Mount Joy Township Zoning Hearing Board*, 934 A.2d 759, 768 (Pa. Cmwlth. 2007), *appeal denied*, 953 A.2d 542 (Pa. 2008) (citations omitted).[10]

As a result, while a special exception cannot be denied on the basis that it violates the general requirements of being against the health, welfare, and safety of the community due to approvals that must be obtained at a later date by a different agency, an application may be denied where the ordinance contains

---

[9] *See, e.g., In re Appeal of Brickstone Realty Corp.*, 789 A.2d 333, 339 (Pa. Cmwlth. 2001), *appeal denied*, 806 A.2d 863 (Pa. 2002) (holding that detailed design information such as floor plot plans, even if required by an ordinance, is not relevant to considering a special exception application); *Schatz v. New Britain Township Zoning Hearing Board of Adjustment*, 596 A.2d 294, 298 (Pa. Cmwlth. 1991) (holding that sewage capacity, storm water management, and water supply issues "are to be addressed further along in the permitting and approval process").

[10] The ordinance at issue in that case required applicants to demonstrate compliance with requirements concerning architectural style, signage, traffic and road improvements, and lighting. *Elizabethtown/Mt. Joy Associates, L.P.*, 934 A.2d at 763.

specific requirements regarding the provision of utilities. *East Manchester Township Zoning Hearing Board v. Dallmeyer*, 609 A.2d 604, 608 (Pa. Cmwlth. 1992). Where an ordinance requires that all mobile homes be supplied with a "continuing supply of safe and potable water," a special exception can be denied if the applicant fails to establish that sufficient potable water can be supplied to the proposed development as required. *Id.* *See also Patullo v. Zoning Hearing Board of Township of Middletown*, 701 A.2d 295, 299 (Pa. Cmwlth. 1997) ("As the Board concluded, the increased flood level caused by the construction of the proposed garage would have the adverse effect on the public welfare and contravene the stated purposes of the F–2 district. Since Patullo failed to establish that his proposal complied with all of the required standards for granting a special exception, the Board's refusal to grant a special exception was proper.").

As outlined above, Section 1108.4.D.6 requires the Board to consider the "[a]dequacy of water supply and sewage disposal facilities." Additionally, Section 1108.4.E. of the Zoning Ordinance states, in relevant part, that "[n]o application shall be approved unless it is found that, *in addition to complying with each of the standards enumerated above, any of the applicable standards contained in this Ordinance shall be met.*" (Emphasis added).

In turn, Section 1204.1.B.1. only permits development in the floodway if the effect on flood heights is fully offset by improvements and the permits from the Township and DEP are obtained. With respect to sanitary sewer facilities within the flood plain area, Section 1204.3.C. states that "[a]ll new or replacement sanitary sewer facilities and systems, and private package sewage treatment plants (including all pumping stations and collections systems), shall be located, designed and constructed to minimize or eliminate flood damages and the

11

infiltration of flood waters into the systems and discharges from the systems into flood waters;" that "[n]o part of any on-site sewage system shall be located within any floodplain area except in strict compliance with all state and local regulations for such systems;" and that "[i]f any such system is permitted, it shall be located so as to avoid impairment to it, or contamination from it, during a flood." Moreover, Section 1202.1 of the Ordinance states that "[p]ermits shall be required before any construction or development is undertaken within any identified floodplain area" and Section 1202.2.B. provides that no permit shall be issued until "all other necessary government permits required by State and Federal laws have been obtained."[11]

The only evidence that Landowner presented regarding the sewage disposal facilities was Principal's uncorroborated statements that he was told by the operator of the facility "that we were set up so that the material and so forth coming from this site will be regulated over a period of time to go to the plant to be treated," and that he was told by the Township's sewer enforcement officer that "it can work in that plant." R.R. at 34a, 35a.[12] With respect to the development in the floodway, the Notes on Landowner's sketch plan state:

---

[11] Landowner's assertion that the trial court erred in relying on Section 1201.2 of the Zoning Ordinance in part is specious at best. Although the Board stated in its decision that its reason for denying the application was Landowner's failure to comply with Section 1108.4, as outlined above, Section 1108.4.E. specifically incorporates all other applicable standards in the Zoning Ordinance; the Board's decision specifically references the Objectors' concerns "regarding the capacity of the sewage plant to handle the additional sewage, what type of debris would be carried downstream by a flood, [and the fact that] the property is in the floodway and floodplain;" and one of the three Board members seconded the denial of the application at the hearing due to "no documentation of the sewage disposal." R.R. at 14a, 77a.

[12] As the ultimate finder of fact, the Board was free to reject Landowner's self-serving testimony in this regard. As we have explained, "[i]n conditional use proceedings where the trial **(Footnote continued on next page…)**

12

2.    Portions of this campground and lake are located within the 100 year floodway. The improvements proposed in the floodway must be offset with material excavated from the proposed lake. Necessary permits for this work will be obtained prior to construction.

*Id.* at 182a. As acknowledged by Landowner's surveyor at the Board hearing:

I think it's important to keep in mind that the floodway is regulated not only by [the Township], but also by, once again, DEP. He's not allowed to place any fill within that floodway without getting a joint permit. It's a fairly extensive permit granted by DEP and it's also regulated basically twice.

*Id.* at 43a.

Landowner presented no credited evidence that it has sought the required approvals necessary for the development and construction in the floodway or the use of the sewer facilities in the floodplain, or that such development meets the express standards and criteria in the Zoning Ordinance outlined above. As we have explained, an applicant must "come forward with evidence detailing how it [will] be in compliance with the requirements necessary to obtain a special exception," and "[e]vidence is not a 'promise' that the applicant will comply because that is a legal conclusion the Board makes once it hears what the applicant intends to do and then determines whether it matches the requirements set forth in the ordinance." *Edgmont Township v. Springton Lake Montessori School*, 622

---

**(continued…)**

court has taken no additional evidence, the Board is the finder of fact, empowered to judge the credibility of witnesses and the weight afforded to their testimony; a court may not substitute its interpretation of the evidence for that of the Board." *In re Richboro CD Partners, L.P.*, 89 A.3d at 754-55 (citation omitted).

A.2d 418, 419 (Pa. Cmwlth. 1993) (citation omitted).[13]   Due to the limited evidence that Landowner presented as to how the development and construction would meet the express Zoning Ordinance requirements, the trial court did not err in affirming the Board's denial of Landowner's conditional use application.

Accordingly, the trial court's order is affirmed.[14]

MICHAEL H. WOJCIK, Judge

---

[13] *Cf. In re Application of Saunders*, 636 A.2d 1308, 1311 (Pa. Cmwlth. 1994), *appeal denied*, 657 A.2d 494 (Pa. 1995) ("Saunders presented testimony, diagrams and descriptions of the proposed water and sewage facilities.  Because approval of a use is only the first step along the road for Saunders to receive an occupancy permit and, because the Township's conditional use requirements are limited, we are not convinced to expand them.  Therefore, we hold that the information provided by Saunders was adequate to meet the requirement set forth in . . . the zoning ordinance that the mobile home park have 'central sewer and water' and that the Supervisors erred in denying the application on the basis that the application itself did not meet the requirements for adequate water and sewage.").

[14] Because Landowner failed to present evidence to satisfy the specific requirements of the Township's Zoning Ordinance, we need not address its argument with respect to the satisfaction of the Ordinance's general requirements and Objectors' burden in that regard.  Finally, with respect to the satisfaction of the specific requirements, Landowner's reliance on *Broussard v. Zoning Board of Adjustment of the City of Pittsburgh*, 907 A.2d 494 (Pa. 2006) is misplaced.  In that case, in support of a special exception for off-site parking, the landowner presented an Interim Planning Overlay District Plan; a Parking Demand Analysis Study; a Parking Management Plan that had been approved by the City; the testimony of a parking consultant; and a letter from the lessee-operator of a nearby parking garage confirming that there would be sufficient parking spaces to meet the requirements of the zoning ordinance.  *Id.* at 497.  As the Supreme Court explained, "the Zoning Board interpreted the relevant provisions of the ordinance to permit granting a special exception where [the landowner]'s submissions contained adequate assurances that the off-site parking needs associated with the proposed use would be met in accordance with the requirements of the ordinance, even though no legally-binding contract existed at the time of the hearings."  *Id.* at 502.  In contrast, in this case, there was absolutely no evidence presented to the Board other than the uncorroborated assertions of Landowner's principal and surveyor that the specific requirements of the Township's Zoning Ordinance would be satisfied.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Mar-Del Holdings, LLC, | : | |
| | : | No. 1228 C.D. 2015 |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Orange Township Board of Supervisors | : | |
| | : | |
| v. | : | |
| | : | |
| Mark Acker, Donna Acker, Morgan | : | |
| Barclay, Mary Barclay, Steve Beyer, | : | |
| Cindy Beyer, Patricia Brewster, Robert | : | |
| Brewster, Fred Brockway, Jan Brockway, | : | |
| Marty Chamberlain, Gail Chamberlain, | : | |
| John J. D'Orazio, Barbara D'Orazio, | : | |
| John D'Orazio, Pam D'Orazio, Susan B. | : | |
| Fetterman, Dan Fetterman, Nathaniel | : | |
| Flook, Sherry Flook, Charles Fritz, | : | |
| Jennifer Fritz, Susan Hales, Gary Hess, | : | |
| Penny Hess, Corey Hughes, Madeleine | : | |
| Hughes, Ronald Hunter, Janet Hunter, | : | |
| John Katch, Jennifer Thomas, George | : | |
| Larson, Nancy Larson, Jayleen Miller, | : | |
| Eric Ortuba, Amanda Ortuba, Larry | : | |
| Recla, Carrie Recla, Anthony Reed, | : | |
| Cathy Reed, Gregory Sherman, Joyce | : | |
| Sherman, Andrew Smith, Christine Smith, | : | |
| Eric Sorg, Erin Sorg, and Matthew | : | |
| Swinehart | : | |

# **O R D E R**

AND NOW, this 12th day of May, 2016, the order of the Court of

Common Pleas of the 26th Judicial District (Columbia County Branch) dated June

22, 2015, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge