# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mushroom Hill, LLC           :
                                 :
        v.                  :
                                 :
Swatara Township Board     :
of Commissioners,          :   No. 178 C.D. 2021
              Appellant    :   Argued: December 16, 2021

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge[1]
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON       FILED: March 8, 2022

      Appellant, the Swatara Township Board of Commissioners (Board) appeals from the January 27, 2021, decision and order of the Court of Common Pleas of Dauphin County (trial court). The trial court reversed the Board's February 27, 2020, decision and order denying the application of Appellee, Mushroom Hill, LLC (Mushroom Hill) for a conditional use permit to build warehouses in the C-G General Commercial Zoning District (C-G District) of Swatara Township (Township). Upon review, we reverse the trial court's order.

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

## I. Facts & Procedural Background

Mushroom Hill is the equitable owner of a 165-acre tract of land in Swatara Township. Trial Ct. Op., 1/27/21, at 1; Bd. Op., 2/27/20, at 2. The property is bounded by Penhar Drive to the west, Mushroom Hill Road to the east, Chambers Hill Road to the south, and Route 322 to the north. Trial Ct. Op. at 1. The property is located mostly within the C-G Commercial Zoning District with smaller portions located within the M-L Light Manufacturing District and the R-S Single Family Residential Zoning District. Trial Ct. Op. at 2. This appeal concerns Mushroom Hill's plans for the portion located in the C-G District. Bd. Op. at 2.

On September 6, 2019, Mushroom Hill submitted an application to the Board seeking permission to construct four warehouses on the property. Trial Ct. Op. at 2. One building would be in the M-L District, where warehouses are permitted by right, and three would be in the C-G District, in which warehouses are permitted by conditional use pursuant to the Township's Zoning Ordinance[2] (Ordinance). Trial Ct. Op. at 6. The three proposed warehouse buildings within the C-G District are the subject of this appeal.

Included in the application was a three-page "Narrative Attachment" setting forth Mushroom Hill's proposed compliance with Section 295-94.1(b) of the Ordinance, which requires that conditional use applications for warehouses in the C-G District provide a "detailed description of the proposed use" with regard to eight enumerated topics: the types of materials to be stored, the general scale of the operation, environmental impacts, site planning, effect on surrounding residential neighborhoods, public health and safety, potential disturbance of slopes and other

---

[2] Swatara Twp., Pa., Zoning Ordinance (Ordinance) No. 2010-1 (July 27, 2010).

natural features of the land, and hours of operation.  Ordinance § 295-94.1(b), added by Ordinance No. 2017-7 (June 14, 2017).

At a hearing before the Board, Frank Petkunas (Petkunas) testified on behalf of Mushroom Hill.  Petkunas oversees investment, implementation, and development of properties in the northeastern United States (U.S.) for CRG Integrated Real Estate Solutions (CRG), a national real estate company.  Reproduced Record (R.R.) at 64a.  He stated that Mushroom Hill is wholly owned by CRG as a single purpose entity to develop the property.  R.R. at 67a & 72a.  Access would be from Penhar Drive and Chambers Hill Road with another access point solely for emergency vehicles.  *Id*. at 72a-73a.  The three warehouses in the C-G District would range from 319,000 to 350,000 square feet each, and the site would have parking for 100 employees per building.  *Id*. at 73a.  Petkunas acknowledged that a "full civil design" has not yet been completed, but averred that "we're far enough along in our calculations[] and our research to know" that the plan complies with the Township's setback and density regulations and any requirements or standards for stormwater and grading.  *Id*. at 74a.  Petkunas stated that at this point in the process, the proposal is flexible and added: "We did this in a very prudent manner, and within expectations of what I think would be reasonable development."  *Id*. at 80a-81a.  Petkunas also answered questions from counsel and community residents.

Fred Ferraro (Ferraro), who oversees design and construction for CRG's northeastern U.S. properties, also testified on behalf of Mushroom Hill.  He testified as to the site layout and also answered questions from counsel and community residents.  Additionally, Jarred Neal (Neal), a traffic project engineer and manager with Traffic Planning and Design in Harrisburg, testified on behalf of Mushroom Hill.  Neal devised a transportation impact study for the project, as

3

required by the Pennsylvania Department of Transportation (PennDOT). R.R. at 99a. Like Petkunas and Ferraro, Neal answered questions concerning the impact of the project on the area, particularly the adjoining residential neighborhood to the south.

Robert Ihlein (Ihlein) testified as the Township's Zoning Officer and Director of Planning and Zoning. R.R. at 222a. Ihlein reported that the Township's Planning Commission had recommended limitations to site access from Chambers Hill Road and more extensive tree buffering between the warehouse buildings and the residential area than required by the Ordinance. *Id*. at 229a. Ihlein also stated that from the Commission's perspective, Mushroom Hill had not initially provided sufficient information and by the time of the third hearing, several months later, "from what I see so far . . . [Mushroom Hill] still has not met all of the tests in the conditions required by the Zoning Ordinance." *Id*. at 230a.

Numerous community residents also asked questions and raised concerns in opposition to various aspects of the project.[3] Residents' opposition arose from the information provided by Mushroom Hill's witnesses, but also from the community residents' view that Mushroom Hill had failed to provide sufficient information about nearly all aspects of the proposal. R.R. at 326a-49a & 352a-54a. Concurrent with the final hearing on January 15, 2020, Mushroom Hill submitted a two-page document with ten proposed conditions it would agree to meet in order to facilitate conditional use approval. R.R. at 453a-54a.

---

[3] All residents quoted here were sworn in and characterized by the Board as "resident parties." Bd. Op. at 3.

The Board issued its decision and order denying Mushroom Hill's application on February 27, 2020. The Board's Findings of Fact summarized the testimonies of Petkunas, Ferraro, and Neal on behalf of Mushroom Hill and the comments of the various community residents. Bd. Op. at 5-16. Ultimately, the Board concluded that Mushroom Hill failed to meet its burden to show that the project would meet any of the Ordinance's conditional use standards for a warehouse. According to the Board, Mushroom Hill's written application, plus its witnesses' testimony, did not provide sufficiently detailed information as to the type of products to be stored and distributed (including the possibility of toxic or hazardous materials), the potential environmental impact of the project, the proposed hours of operation, the impact on the adjacent residential neighborhood and elementary school, the impact on traffic patterns and volume, buffering of the adjacent residential neighborhood, the health and safety of nearby residents, and site suitability in terms of slopes, geology, woodlands, and wildlife. *Id*. at 18-25.

On Mushroom Hill's appeal, the trial court reversed. The court concluded that the Board's recitations of the Mushroom Hill witnesses' testimony in the "Findings of Fact" portion of its decision were actually "facts found by the Board" and that sufficient evidence therefore existed to approve Mushroom Hill's application. Trial Ct. Op. at 4-5. The trial court also concluded that the Board's determination had improperly imposed requirements on Mushroom Hill that exceeded the limited scope of conditional use proceedings. *Id*. at 6. Finally, the trial court concluded that the Board mistakenly relied on and elevated the community residents' comments, which the trial court characterized as speculation, bald

assertions, perceptions, and personal opinions, to the level of competent evidence. *Id*. at 7-8. The Board appeals to this Court.[4]

## II. Parties' Arguments

The Board argues that the trial court erred in reversing its determination that Mushroom Hill failed to meet its burden as to all of the criteria for warehouses as a conditional use in the C-G Zoning District. Bd.'s Br. at 16. The Board asserts, for example, that Mushroom Hill failed to comply with the Ordinance's requirement that an applicant must provide "a detailed description of the proposed use" in each of the eight enumerated factors in the subsections of Section 295-94.1(B). *Id*. at 16. For example, the Board notes that subsection 1 requires a "detailed description" of, *inter alia*, "the types of materials" to be stored in a proposed warehouse, but Mushroom Hill's application states only that the proposed warehouses will process "consumer retail products," which the Board contends is insufficient. *Id*. at 16-17.

The Board also avers that the trial court erred in viewing the Board's recitation of the Mushroom Hill witnesses' testimony as actual facts found by the Board. The Board points to the latter part of the decision, which expresses only that the Board found the community residents' statements and comments credible. *Id*. at 34-37.

---

[4] In a land use appeal, where the trial court does not take additional evidence, this Court's scope of review is limited to determining whether the local governing body committed an error of law or an abuse of discretion. *In re Thompson*, 896 A.2d 659 (Pa. Cmwlth. 2006). An abuse of discretion will be found only where the findings of the governing body are not supported by substantial evidence. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983). Our review of whether the governing body committed an error of law is conducted *de novo* and we are not bound by the legal conclusions of the governing body or the trial court. *EQT Prod. Co. v. Borough of Jefferson Hills*, 208 A.3d 1010, 1025 (Pa. 2019).

6

Mushroom Hill responds that it did provide sufficiently detailed descriptions of the various topics set forth for warehouses as a conditional use. Mushroom Hill's Br. at 13. Mushroom Hill points out that Section 295.94-1(B) does not specify a requisite level of detail and argues that the Board created unwritten standards and effectively modified the terms of the provision in order to reach a desired conclusion of denying the application. *Id.* Moreover, Mushroom Hill avers that the record evidence fully supports its application. For example, Mushroom Hill notes that it provided a detailed description of the proposed processing of the consumer products that the warehouse would be accepting and that the Ordinance does not require a more specific description than "consumer products," which are a "type of material" as indicated in Section 295-94.1. *Id.* at 15.

Mushroom Hill also maintains that the trial court correctly construed the Board's description in its opinion of the Mushroom Hill witnesses' testimony as fact because the recitation of that testimony appears within the decision's "Findings of Fact" section. Mushroom Hill's Br. at 5. Mushroom Hill avers that the trial court was not at liberty to determine which of the Board's "Findings of Fact" were actually facts and which were not. *Id.* at 5-9. Mushroom Hill disagrees that because the Board expressly found the community residents' comments credible, it implicitly discredited or rejected the Mushroom Hill witnesses' testimony that it had already included in its "Findings of Fact." *Id.* at 9-10. Moreover, Mushroom Hill argues that the trial court correctly distinguished between the credibility of the community residents' purported testimony and whether it was competent, relevant, probative, or merely based on speculation or lay opinion. *Id.* at 10-11.

7

## III. Discussion

"[A] conditional use is one specifically recognized by the legislature as consistent with the zoning plan." *Aldridge v. Jackson Township*, 983 A.2d 247, 253 (Pa. Cmwlth. 2009). "As such, it is presumed the particular type of use does not, of itself, adversely affect public interest." *Id.* However, the "paramount duty" of the elected officials of a locality is to protect residents from harm to their persons and property, and conditional uses present the possibility that the property rights of neighboring landowners will be affected. *See Luke v. Cataldi*, 932 A.2d 45, 54 (Pa. 2007). Conditional use appeals are analyzed on a case-by-case basis, each turning on the use requested and the language of the particular ordinance at issue. *In re Richboro CD Partners, L.P.*, 89 A.3d 742, 749 (Pa. Cmwlth. 2014). A local authority is empowered to set specific conditions as a basis for approving a conditional use application. *Coal Gas Recovery, L.P. v. Franklin Twp. Zoning Hearing Bd.*, 944 A.2d 832, 839 (Pa. Cmwlth. 2008). To do so, the locality must support those additional conditions with record evidence; however, the imposition of this requirement presupposes that the record, including the developer's application and evidence, contains sufficient information to guide the locality in its task. *See id.*

"In addressing an application for a conditional use, a local governing body must employ a shifting burden of persuasion." *Aldridge*, 983 A.2d at 253 (footnote omitted). "First, the applicant must persuade the local governing body [that] the proposed use complies with the requirements in the ordinance for such a conditional use" at the time of submission. *Id.* An applicant is not required to present every detail of the design of the proposed development at the conditional use stage, but merely expressing an intention or promise to comply with all zoning

8

requirements is insufficient to show entitlement to a conditional use. *Id*. (collecting cases). If applicants were automatically entitled to conditional use approval based solely on a promise of future compliance, "it would make the approval process meaningless." *In re Thompson*, 896 A.2d 659, 680 (Pa. Cmwlth. 2006). Moreover, compliance at the time of submission is required even though the conditional use inquiry involves only "the use of the land, as opposed to the particular design details of the development." *Joseph v. N. Whitehall Twp. Bd. of Supervisors*, 16 A.3d 1209, 1215 (Pa. Cmwlth. 2011).

Once the applicant satisfies its initial burden, "a presumption arises [that] the proposed use is consistent with the general welfare." *Aldridge*, 983 A.2d at 253. "The burden then shifts to objectors to rebut the presumption by proving, to a high degree of probability, [that] the proposed use will adversely affect the public welfare in a way not normally expected from the type of use." *Id*.

We are mindful that "ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of its land." *Aldridge*, 983 A.2d at 253. However, "a board of supervisors is entitled to considerable deference in interpreting its zoning ordinance." *Id*. at 254. These interpretations "become of controlling weight unless they are plainly erroneous or inconsistent" with the ordinance. *Turchi v. Phila. Bd. of License & Inspection Rev.*, 20 A.3d 586, 594 (Pa. Cmwlth. 2011) (internal punctuation omitted).

Local agencies are not bound by technical rules of evidence when conducting hearings. 2 Pa.C.S. § 554. Rather, they are empowered to consider "all relevant evidence of reasonably probative value." *Id*. The need for such flexibility in matters of evidentiary admissibility is heightened in conditional use hearings conducted by localities, which, as noted above, have the "paramount duty" to protect

9

their residents from harm to their persons and property because conditional uses present the possibility that the property rights of neighboring landowners will be affected. *Luke*, 932 A.2d at 54.

### A. The Board's Factual Recitation

The parties dispute the proper characterization of the Board's recitation of witness testimony in the "Findings of Fact" portion of its decision, particularly that of the Mushroom Hill witnesses. A review of this section reveals that the Board's decision indicates that the recitation was merely a distillation of the various witnesses' testimony. Bd. Op. at 5. The Board's decision did not state or suggest at any time that the substance of the Mushroom Hill witnesses' testimony was actually accepted as fact. For example, when Petkunas was asked during the hearing whether he anticipated that the proposal would cause negative environmental impacts on the area, he answered "No." R.R. at 81a. In its decision, the Board stated that Mushroom Hill's "witnesses provided the following testimony" and characterized Petkunas's response as follows: "No adverse environmental impacts are anticipated." Bd. Op. at 7. Subsequently in its "Conclusions of Law," the Board stated: "The Application did not provide adequate information regarding environmental impacts that are likely to be generated . . . beyond the general statement that 'No adverse environmental impacts are anticipated.'" *Id*. at 19. The Board did not specifically make a credibility determination with regard to Mushroom Hill's witnesses.

The Board's decision could easily have expressed or addressed the distinction between its recitation of testimony and its credibility determinations and findings of fact, and local zoning entities are well advised to do so in order to avoid

10

the situation that has arisen in this matter. However, the Board's import is clear enough that appellate review is not hindered, and the structure of the decision, albeit imperfect, does not indicate that the Board negated its findings of fact in its conclusions of law. Rather, as illustrated by the above example, to the extent the recitation of Petkunas's testimony in the first part of the Board's decision amounts to a finding of fact, that finding is limited to Petkunas having testified to his belief that no negative environmental impacts were expected; the Board ultimately rejected the substance of that testimony as fact. The same is true with regard to the Board's presentation of the other Mushroom Hill witnesses, and the trial court erred in concluding otherwise. *See* Trial Ct. Op. at 4.

### B. Sufficiency of the Conditional Use Application

Turning to the substantive questions at issue, Section 295-94.1 of the Ordinance governs warehouses and storage facilities as conditional uses in the Township's C-G Zoning District. It provides:

> Warehouses or storage as a principal conditional use in the [C-G District] shall meet the following conditions:
>
> A. Minimum lot area: 15 acres.
>
> B. The applicant shall provide a *detailed description* of the proposed use in each of the following topics:
>
> > (1) The nature of the on-site activities and operations, the types of materials stored, the frequency of distribution and restocking, the duration period of storage of materials, and the methods for disposal of any surplus or damaged materials. In addition, the applicant shall furnish evidence that the disposal of materials will be

11

accomplished in a manner that complies with state and federal regulations.

(2) The general scale of the operation, in terms of its market area, specific floor space requirements for each activity, and the total number of employees on each shift.

(3) Any environmental impacts that are likely to be generated (e.g., odor, noise, smoke, dust, litter, glare, vibration, electrical disturbance, wastewater, stormwater, solid waste, etc.) and specific measures employed to mitigate or eliminate any negative impacts.

(4) Site planning. The application shall include proper site layout, internal circulation, parking, buffering, and all other elements of proper design as specified in this chapter.

(5) Neighborhood. The proposed use shall not substantially change the character of any surrounding residential neighborhood after considering any proposed conditions upon approval, such as limits upon hours of operation; safety.

(6) The proposed use shall not create a significant hazard to the public health and safety, such as fire, toxic or explosive hazards.

(7) The proposed use shall be suitable for the site, considering the disturbance of steep slopes, mature woodland, wetlands, floodplains, springs and other important natural features.

(8) Hours of operation.

Ordinance § 295-94.1(B) (emphasis added).

Mushroom Hill therefore bore the initial burden to prove that its application and evidence complied with this provision, which required Mushroom Hill to present the Board with sufficiently detailed descriptions of how the proposed warehouse project would impact the areas set forth in each of the eight criteria. *Aldridge*, 983 A.2d at 253. The Board was tasked with interpreting the Ordinance and determining on behalf of the locality whether Mushroom Hill's application met the Ordinance's requirement of a "detailed description" of how the proposed warehouse project would address the enumerated criteria. *Luke*, 932 A.2d at 54; *Aldridge*, 983 A.2d at 254.

### 1. Types of Materials Stored

Subsection 1 of Section 295-94.1(B) required Mushroom Hill to provide, *inter alia*, a "detailed description" of the types of materials that would be stored in the proposed warehouses. Ordinance § 295-94.1(B)(1). In the narrative accompanying its application, Mushroom Hill stated: "No tenant has been identified at this time for occupancy of any of the proposed warehouse buildings. It is anticipated that the tenant will be in the consumer retail area, such that consumer products will be brought to the property, for storage and distribution out [] of the property." R.R. at 389a. Petkunas confirmed in his testimony that a tenant had not yet been secured, but stated that "the highest probability is that we would have companies that specialize in consumer, not durable products, right? We're talking

13

about cereals, hair [products], or all food products, maybe shoes, something of that nature." *Id*. at 79a.

At the ensuing hearings, community residents raised concerns that "consumer products" could also include hazardous or toxic materials such as paint, solvents, pesticides, fertilizers, or ammunition, and that the application failed to ensure that such items or substances would not be included. *Id*. at 263a & 306a-09a. One pointed out that the unannounced presence of such items or materials in the warehouses could be a danger to firefighters who might be called to the site in the event of a fire or other emergency. *Id*. at 339a. The proposed conditions Mushroom Hill submitted at the final hearing did not address this concern. *See id.* at 453a-54a.

The Board concluded that the application did not provide sufficiently detailed information regarding the types of materials to be stored aside from a reference to "consumer products." Bd. Op. at 19. According to the Board, Mushroom Hill "provided only general information regarding the frequency of distribution and restocking and the duration of storage of materials" and "provided no information regarding the methods for disposal of any surplus or damaged materials." *Id*.

The trial court, upon concluding that the Board's recitation of the Mushroom Hill witnesses' testimony averring the project's compliance with Section 295-94.1(B) amounted to findings of fact, reversed the Board's decision. Trial Ct. Op. at 5. The trial court added that the Board's conclusion that Mushroom Hill failed to provide sufficient information as to this and the other factors was erroneous, as it would have mandated more detail from Mushroom Hill than a conditional use proceeding required. *Id*. at 6.

14

Although the Ordinance does not specifically define or characterize exactly what would constitute a "detailed description" of the provision's required factors, Mushroom Hill has not challenged Section 295.94.1(B) on the basis of vagueness or ambiguity. We observe, however, that "detailed" is defined in Merriam Webster's Dictionary as "marked by abundant detail or by thoroughness in treating small items or parts."[5] Likewise, the American Heritage Dictionary defines "detailed" as "[c]haracterized by abundant use of detail or thoroughness of treatment."[6] The common comparative term in these definitions is thoroughness, which by any common understanding requires something more from an applicant than a minimal or generic description.

An ordinance may call for developers to provide detail in their applications even if the proposal is at a relatively early stage where full specifications are not yet required. In *Elizabethtown/Mount Joy Associates, L.P. v. Mount Joy Township Zoning Hearing Board*, 934 A.2d 759 (Pa. Cmwlth. 2007), the ordinance required applicants to submit detailed plans for exterior lighting that could impact neighboring areas.[7] *Id*. at 767. We agreed with the local board that the developer's application for a shopping mall failed to do so and that the developer's promises to comply with all requirements going forward were insufficient where it had provided

---

[5] Merriam-Webster Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/detailed (last visited March 7, 2022).

[6] Am. Heritage Online Dictionary, *available at* https://www.ahdictionary.com/word/search.html?q=detailed (last visited March 7, 2022).

[7] *Elizabethtown/Mount Joy Associates* is a "special exception case," which are generally equivalent to conditional use matters: "A conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal governing body rather than the zoning hearing board." *In re Thompson*, 896 A.2d at 670. Therefore, "the law regarding conditional uses and special exceptions is virtually identical[.]" *Id*.

only a conceptual plan for the project: "Simply put, a concept plan is insufficient to warrant the granting of a special exception; rather, to be entitled to receive a special exception, the applicant must come forward with evidence detailing its compliance with the necessary requirements." *Id*. at 767-68. The point of requiring some level of detail at the application stage is to ensure the local board has enough information to determine whether the applicant has demonstrated compliance with the requirements and the proposed use is truly appropriate. *Id*. at 763

Here, Mushroom Hill merely stated in its written application that the warehouses would retain tenants in "consumer retail," and Petkunas's only testimony on the matter was to suggest possibilities, such as food, beauty products, and shoes. R.R. at 78a-79a & 389a. Mushroom Hill never addressed the concerns raised by the residents about toxic or hazardous materials, either through witnesses or in the proposed conditions it prepared in response to the objections. *See id.* at 453a-54a.

The Board has been tasked with protecting residents' safety, interests, and property from harmful impacts due to development, and even in the relatively limited context of conditional use proceedings, the Board was within its discretion to conclude that Mushroom Hill's response to this factor, which was limited to its statements that the warehouses would be for "consumer products" or tenants in "consumer retail" was neither sufficiently thorough nor sufficiently detailed to meet the requirements of Section 295-94.1(B). Even if, as Petkunas testified, warehouses are commonly developed on a speculative basis as to the ultimate tenants and products, this does not absolve Mushroom Hill of the responsibility to comply with the Ordinance's requirements for approving a warehouse as a conditional use, including providing a "detailed description" of the types of materials to be stored

16

and processed. *See* R.R. at 79a-80a. And as noted, a mere stated intention to comply with all local requirements, as Mushroom Hill expressed throughout the proceedings before the Board, is insufficient to show entitlement to a conditional use. *In re Thompson*, 896 A.2d at 680.

We therefore conclude that the Board did not err in concluding that Mushroom Hill's application did not satisfy this factor.[8]

## 2. Environmental Impacts

Subsection 3 required Mushroom Hill to provide a detailed description of "[a]ny environmental impacts that are likely to be generated (e.g., odor, noise, smoke, dust, litter, glare, vibration, electrical disturbance, wastewater, stormwater, solid waste, etc.) and specific measures employed to mitigate or eliminate any negative impacts." Ordinance § 295-94.1(B)(3). In the narrative accompanying its application, Mushroom Hill stated: "No adverse environmental impacts are anticipated. Restricting the truck traffic away from the residents to the south will reduce any noise impact." R.R. at 389a. Petkunas reiterated this point in his testimony and added that no manufacturing would be taking place, so no smoke or fumes were expected, that any dust would be inside the buildings and not released outside, and that no heavy usage of electricity or creation of vibrations was expected. *Id*. at 77a & 81a-83a. Petkunas also averred that the project would not encroach on any sensitive natural areas. *Id*. at 84a-85a. Petkunas acknowledged that a fully detailed plan for stormwater runoff and sediment control had not yet been completed

---

[8] The Board also credited the testimony and comments of the neighbors who objected to Mushroom Hill's application. Bd. Op. at 16. We note, however, that since Mushroom Hill failed to show compliance with the Ordinance's requirements, the burden never shifted to the residents. *See Aldridge*, 983 A.2d at 253.

17

but asserted that during that process, Mushroom Hill would engage the necessary state, county, and local authorities to ensure full compliance with any environmental requirements and standards. R.R. at 173a, 179a-80a, 186a, & 196a-98a.

When questioned about this factor, Ferraro stated that Mushroom Hill planned to add trees between the warehouse facilities and the residential area as a noise barrier, but also acknowledged that concrete walls "would be more sufficient than trees." R.R. at 175a-76a. Ferraro also testified that CRG has agreed to include a two-mile nature trail on the property for use by nearby residents and will "definitely consider" maintaining an existing trail already on the property. R.R. at 91a-92a.

Local residents raised numerous questions and concerns about the environmental impact of the project, including diesel fumes and emissions from trucks entering and leaving the site, groundwater contamination and release of radon gas from the underlying limestone, adverse impacts on local wildlife, the immediate and long-term effects of deforestation due to the clearcutting of mature trees required for the proposed construction, and similar problems in an area nearby where warehouses have been abandoned, but the natural terrain they sit on has not recovered from their construction and operation. R.R. at 239a, 319a-25a & 350a-52a.

In its subsequent proposed conditions, Mushroom Hill promised compliance with noise, light, and sewer regulations, agreed to work with the Township to ensure minimal environmental impact from construction, and stated that it would consider using permeable pavement where possible "[i]f there is a benefit and other means of ground water infiltration are not used and allowed [by regulations and authorities] and economical, in [Mushroom Hill's] sole discretion."

*Id*. at 453a-54a. Mushroom Hill did not respond, either in testimony or in its subsequent written proposed conditions, to concerns about the continuous output of diesel exhaust, carbon monoxide, carbon dioxide, nitrogen, hydrocarbons, and nitrogen oxide from trucks coming to and leaving the proposed facility. *See id*. at 237a-39a & 453a-54a. The Board found Mushroom Hill's submission for this criterion insufficient, concluding that adequate information had not been provided to meet the requirement of a detailed description "beyond the general statement that '[n]o adverse environmental impacts are anticipated'" and the promise to direct truck traffic away from the residential area. Bd. Op. at 19-20.

Regarding what may meet a "detailed description" requirement in the context of environmental impact, *Geiselman v. Hellam Township Board of Supervisors* (Pa. Cmwlth., No. 805 C.D. 2020, filed Oct. 20, 2021), 2021 WL 4878980 (unreported),[9] is instructive. There, a conditional use application was sought to build a winery and event space in a location zoned for rural-agricultural use after two prior applications had failed to meet the township ordinance's noise restrictions. *Id*. at 2, 2021 WL 4878980, at *1. The ordinance at issue required a "detailed written plan" explaining how the proposal would address such concerns. *Id*. at 5, 2021 WL 4878980, at *2. The applicants' written submission was described as follows:

> In support of the application, Applicants submitted a written plan with "a detailed description of proposed winery events, sanitation provisions, [a] plan for noise control, an explanation of how amplified sound [would] be addressed, an explanation of how noise complaints [would] be addressed, and provisions for the control of

---

[9] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

> lighting." On weekdays, the hours of operation would be from noon until 8:00 or 9:00 p.m., with the closing extended to 10:00 p.m. on Fridays and Saturdays. Sunday hours would be from noon until 5:00 p.m. All outdoor winery events would end by 10:00 p.m. and indoor ones by 11:00 p.m.

*Id*. at 4, 2021 WL 4878980, at *1 (internal record citations omitted). The Board approved the application and specifically commended the applicants' written submission; the trial court and this Court affirmed. *Id*. at 11, 2021 WL 4878980, at **5-6.

In *Williams Holding Group, LLC v. Board of Supervisors of West Hanover Township*, 101 A.3d 1202 (Pa. Cmwlth. 2014), the applicant sought conditional use approval for a proposed stormwater facility. Before seeking approval, the applicant had secured permits for the project from the Pennsylvania Department of Environmental Protection and the U.S. Army Corps of Engineers. *Id*. at 1218. The local board denied the application, and the trial court affirmed, but this Court reversed after determining that those permits, which were of record, amounted to substantial compliance with the zoning provision at issue in that case. *Id*. at 1218-19.

*Geiselman* and *Williams Holding Group* offer examples of due diligence where a conditional use ordinance requires detailed information from applicants. In both cases, the applicants expended recognizable effort in preparing their responses. Here, Mushroom Hill has provided no evidence that it has considered the potential environmental impact of the proposed warehouses. Its

continued bald assertions, without more, that it will comply with all regulations are insufficient to establish entitlement to a conditional use. *Aldridge*, 983 A.2d at 25.

Compared with the level of detail in the *Geiselman* application, Mushroom Hill's submission cannot be said to provide a "detailed description" of how the environmental concerns of subsection 3 would be addressed. As the Board noted, Mushroom Hill's application contained no description at all except a promise to direct truck traffic away from the residential area to lessen noise. Bd. Op. at 19-20. Mushroom Hill failed entirely to address any of the other environmental concerns raised by the community residents, such as groundwater contamination and radon release from the underground limestone if any blasting occurs during construction and the impact on local wildlife and federally protected migratory birdlife due to the need to clear-cut mature trees on the parcel in order to build the warehouses. R.R. at 319a-25a & 350a-52a.

Mushroom Hill's response to this factor, limited to promises that no adverse environmental impacts are anticipated from the project and to direct truck traffic away from the residential area, is more like the underdeveloped lighting plan in *Elizabethtown/Mount Joy Associates*. Bd. Op. at 19-20. That plan also provided few particulars and details while promising future compliance with any requirements. 934 A.2d at 767. There, as here, when an ordinance requires a level of detail in a use application, it is to ensure that sufficient due diligence has been undertaken by an applicant that promises of future compliance may not prove to be empty. *Id.* at 763. Therefore, the Board acted within its discretion and did not err in concluding that Mushroom Hill failed to meet this factor.

21

### 3. Character of the Surrounding Neighborhood

Subsection 5 required a detailed explanation assuring that the proposed facility "shall not substantially change the character of any surrounding residential neighborhood after considering any proposed conditions upon approval, such as limits upon hours of operation; safety." Ordinance § 295-94.1(B)(5). In its narrative accompanying the application, Mushroom Hill stated: "The buildings are designed such that the truck movements will not occur between the buildings and the residential neighborhood to the south. Screening will be installed in this area." R.R. at 389a.

With regard to Chambers Hill Road, which runs south of the parcel and through the adjoining residential neighborhood, Petkunas testified that the road would have an access point to and from the site but did not mention any qualifications or limitations on access. R.R. at 72a-73a. Ferraro subsequently testified that based on a meeting with Township representatives, access would no longer be from Chambers Hill Road. *Id.* at 93a-94a. Still later, however, Neal testified that based on a meeting with PennDOT, access from Chambers Hill Road had been restored to the plans with a limitation preventing vehicles from making left turns onto or from the road. *Id.* at 159a-60a & 171a. As of the final hearing, therefore, the proposal still anticipated truck traffic on Chambers Hill Road.

Petkunas also testified that the proposal would exclude truck loading docks on the south side of the site in order to ensure distance from the residential community and that there would be no encroachment on sensitive natural areas in the vicinity. R.R. at 77a & 84a-85a. Ferraro added that Mushroom Hill would provide upgraded visual and noise buffering (trees, walls, or a combination of both)

22

in order to minimize impact on the neighborhood, include a new nature trail for residents, and would "definitely consider" maintaining an existing trail used by residents. *Id*. at 91a-93a & 166a-67a. When asked by a resident about the security and noise impact on the elementary school adjoining the property to the south, Ferraro acknowledged that the school had not yet been specifically considered but maintained that it would be part of the development process for the full land use plan. *Id*. at 176a-77a.

Neal also testified that based on his traffic calculations, the project would not create unreasonable delays at the affected intersections and would not violate minimum "safe stopping sight distance" standards, which pertain to visual limitations on a vehicle driver's ability to see an oncoming pedestrian or vehicle and stop in order to avoid a collision. R.R. at 104a-06a. He acknowledged, however, that based on his study, the warehouse facility would add an estimated 1,936 new total trips per day (both going to and coming from the facility) to the roads in the immediate vicinity, of which an estimated 766 would be trucks. *Id*. at 131a & 434a.

Notably, the community residents asserted that Mushroom Hill's application failed to provide a sufficient explanation of the project's potential impact on the neighborhood (including the adjacent elementary school) in terms of traffic, environmental damage, property values, noise, fumes, and emissions from trucks, visual and noise buffering, safety issues for pedestrians, bicycle riders, and school buses, or drainage issues. R.R. at 267a-76a, 280a, 282a, 315a-18a & 350a-52a.

In its subsequent proposed conditions, Mushroom Hill maintained that the proposal currently anticipated access to and from Chambers Hill Road via right turns only, but that it would fund a study on restricting all truck access to Chambers Hill Road along the length of the parcel to Mushroom Hill Road on the east, roughly

23

where the elementary school is located. R.R. at 453a. Mushroom Hill reiterated that it would provide additional trees and perhaps walls to buffer the residential area. *Id.* However, other than general promises to comply with all pertinent regulations for noise, light, sewer, and groundwater issues, Mushroom Hill's proposed conditions did not specifically speak to the project's impact on the character of the neighborhood, although the developer promised to contribute a total of $250,000 to the Township to offset potential adverse effects on residential properties "or for any other proper municipal purpose." *Id*. at 454a.

The Board found Mushroom Hill's presentation with regard to this criterion insufficient, stating:

> The Application did not adequately prove that the Project would not substantially change the character of the surrounding neighborhood. In fact, the evidence presented proved the opposite. There were no conditions of approval that would correct this deficiency in the Application, including a limit on the hours of operation of the Project. The screening proposed by [Mushroom Hill] was woefully insufficient to adequately protect adjacent and neighboring residential areas from the impact of the proposed industrial use. The Project would clearly jeopardize safety in the immediate area, including traffic in the area of Route 322, [and] Chambers Hill and Penhar Roads.

Bd. Op. at 20.

The Board's conclusion is supported by the record. For example, as discussed above, the written application states that "truck movements will not occur between the buildings and the residential neighborhood to the south," but Mushroom Hill's witnesses presented conflicting testimony, ultimately indicating that Chambers Hill Road truck access was planned, albeit with a limitation precluding

24

left turns into or out of the site. R.R. at 72a-73a, 93a-94a, 159a-60a, 171a & 389a. The written conditions proposed by Mushroom Hill at the final hearing also included the Chambers Hill Road truck access, merely adding a caveat that Mushroom Hill would fund a study on restricting such access. *Id*. at 453a. Mushroom Hill's presentation also failed to address neighborhood concerns other than those involving Chambers Hill Road, such as Ferraro's admission that Mushroom Hill had not given any specific consideration to the project's impact on the elementary school adjoining the property to the south, even after Mushroom Hill learned of such concerns throughout the proceedings. *Id*. at 176a-77a.

Accordingly, the Board did not abuse its discretion in concluding that Mushroom Hill's presentation failed to provide sufficient detail on how the proposed warehouse project would impact the character of the adjacent residential area pursuant to subsection 5 of Section 295-94.1(B). This is particularly so considering Mushroom Hill's own evidence that over 1 million square feet of new construction would be added and nearly 2,000 vehicles per day (including nearly 800 trucks) could be coming and going on the neighborhood's main road where an elementary school bordering the site property is located. R.R. at 131a. In addition to the Board's duty to protect the interests of local residents, deference is also due to local zoning authorities' expertise in and knowledge of local conditions. *See Luke*, 932 A.2d at 54; *Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 9 (Pa. Cmwlth. 2015). The Board was likely well aware of the nature and character of the area at issue and the probable impact of this project on the neighborhood. Therefore, with

25

regard to this criterion, the Board acted within its discretion and did not err in its determination that Mushroom Hill failed to meet its burden of proof.

## 4. Health and Safety Hazards

Subsection 6 of Section 295.94.1(B) requires a detailed explanation assuring that the proposed facility "shall not create a significant hazard to the public health and safety, such as fire, toxic or explosive hazards." Ordinance § 295-94.1(B)(6). In its narrative accompanying the application, Mushroom Hill stated: "The buildings will have sprinkler systems installed and toxic or hazardous materials are not anticipated to be stored *in any great quantity*." R.R. at 389a (emphasis added).

Petkunas reiterated that point in his testimony and added that Mushroom Hill would ensure compliance with all relevant regulations. R.R. at 85a & 197a. In response, residents raised concerns that diesel fumes and emissions from hundreds of trucks coming into and leaving the site daily would create health hazards for residents in the area that buffering could not prevent, that hazardous or toxic materials (paint, solvents, pesticides, fertilizers, or ammunition) would be on site, and that since the application failed to specify what would be stored in the warehouses, in the event of a fire or other emergency, first responders would not be sufficiently aware of hazards they might encounter on the site. *Id*. at 239a, 263a, 306a-09a, 322a-23a & 339a. Mushroom Hill's proposed conditions, which it submitted at the final hearing after hearing the residents' concerns, did not address these issues. *See id*. at 453a-54a.

The Board rejected Mushroom Hill's presentation on this criterion as "vague and ambiguous," in that "no guarantees or assurances were given that the

26

proposed use would not create a significant hazard . . . . [Mushroom Hill] appears to be attempting to preserve its right to store toxic or explosive hazardous materials within the [p]roject, and it has not adequately explained to the Board how it will safely accommodate such risks." Bd. Op. at 20-21.

Mushroom Hill's presentation on this issue is particularly sparse given the level of detail produced by the applicants in *Geiselman* and the permits secured prior to application in *Williams Holding Group*, as discussed above in Section 2 (discussing environmental impacts). Moreover, the issue in *Geiselman* was solely noise, which may be characterized as more of a nuisance factor than toxic or hazardous materials, which can cause actual bodily harm over the short or long term. By contrast, Mushroom Hill's averment that it would not store such materials "in any great quantity" without disclosure or other safeguards, was insufficient to warrant approval, much like the lighting plan in *Elizabethtown/Mount Joy Associates*. In fact, the lighting plan found wanting in that case apparently had significantly more detail than Mushroom Hill's response here. *See* 934 A.2d at 767. Moreover, Petkunas's testimony that Mushroom Hill would comply with all relevant regulations, without more, was insufficient to establish entitlement to a conditional use. *See In re Richboro CD Partners*, 89 A.3d at 749. Therefore, with regard to this criterion, the Board acted within its discretion and did not err in concluding it had not been met.

## 5. Impact on Existing Natural Features

Subsection 7 requires a detailed description of the project's site suitability "considering the disturbance of . . . mature woodland[s] . . . and other important natural features." Ordinance § 295-94.1(B)(7). Mushroom Hill's

27

application stated that the project "will not unnecessarily disturb" any mature woodlands and that it would comply with any federal regulations for impacted wetlands. R.R. at 390a. Petkunas reiterated that Mushroom Hill's goal in this project was to stay away from sensitive natural areas. *Id*. at 84a-85a. Ferraro indicated that Mushroom Hill planned to provide new trees as buffers between the project and the residential area, maintain an existing nature trail, and consider adding a new trail, but did not speak specifically to how the project would impact the site. *Id*. at 91a-92a & 166a-67a. In response, residents expressed concerns for local wildlife, the effects of deforestation due to the clearcutting of mature trees required for the proposed construction, parts of the parcel that serve as temporary homes and nesting areas to federally protected migratory birds, and the example of nearby abandoned warehouse facilities on natural terrain that has yet to recover from the construction and presence of such facilities. R.R. at 323a-25a, 350a-52a & 453a-54a. Mushroom Hill's subsequent proposed conditions did not specifically address this factor. See R.R. at 453a-54a.

The Board concluded that Mushroom Hill's application failed to provide sufficient information for this criterion:

> No information was provided by [Mushroom Hill] regarding the known karst geology of the site and the surrounding area and the construction and blasting hazards that may result from the Project. No information was provided regarding existing steep slopes, mature woodlands or wetlands and how they would be accommodated in the Project site.

Bd. Op. at 21.

This factor speaks to natural features of the landscape that, once disturbed by development, may be gone forever. The Board, having local

28

knowledge of the setting and area, was well within its discretion to conclude that Mushroom Hill's averment that it would try to avoid impacting natural areas lacked sufficient, or any, detail to assure the Board of Mushroom Hill's ultimate ability to fulfill its promises of compliance. *See Luke*, 932 A.2d at 54; *Elizabethtown/Mount Joy Associates*, 934 A.2d at 763. This is true even though conditional use proceedings are limited in nature, and particularly because a developer's mere promise to comply with regulations is insufficient to warrant approval. *Aldridge*, 983 A.2d at 253. In light of the foregoing, the Board did not err in finding Mushroom Hill failed to meet this criterion.

### 6. Other Factors

Mushroom Hill bore the burden to comply with all eight criteria set forth in Section 295.94.1(B) of the Ordinance and its failure to meet its burden regarding any one factor would be sufficient to support the Board's denial of Mushroom Hill's conditional use application. As set forth above, the Board did not err in finding Mushroom Hill failed to provide sufficiently detailed descriptions of its plans with regard to the above-discussed factors addressing the project's external impact and relationship with the area and neighborhood. We note also that the Board's overall conclusions are supported in the record by the testimony of Ihlein, who stated that from the perspective of the Township's Planning Commission, Mushroom Hill had not initially provided sufficient information, and by the time of third hearing, several months later, "from what I see so far . . . [Mushroom Hill] still

has not met all of the tests in the conditions required by the Zoning Ordinance." R.R. at 230a.

However, in the interest of thoroughness, we conclude the Board was also within its discretion to determine that Mushroom Hill did not meet the additional factors, which pertain more to internal operations. For example, subsection 8 required Mushroom Hill to provide a detailed description of the proposed hours of operation. Ordinance § 295-94.1(B)(8). Mushroom Hill's application stated: "As no tenants have been identified, specific hours cannot be determined at this time. It is anticipated that one or two shifts would be operating between the hours of 7AM and 9PM typical of warehouse buildings in the area." R.R. at 390a. Petkunas testified that while the bulk of activity happening outdoors within sight or sound of the neighborhood would probably occur between morning and evening, the written application response was not a guarantee that operations would be limited to those hours: "I expect 24-hour operations in these buildings." *Id*. at 86a. In addition to residents' concerns about daytime traffic on Chambers Hill Road, there were concerns that unrestricted overnight operations could affect the neighborhood's quality of life. *Id*. at 263a. Mushroom Hill did not address this issue in the proposed conditions it submitted at the final hearing. *See id*. at 453a-54a. Given Mushroom Hill's failure to commit to *any* restriction on the facility's hours of operation or provide any detail about how much activity might occur during overnight hours when residents could be impacted by noise and light issues, the Board's conclusion that Mushroom Hill failed to satisfy this factor was within its discretion. Bd. Op. at 21.

We therefore reverse the trial court and reinstate the Board's denial of Mushroom Hill's application.[10]

## IV. Conclusion

For the foregoing reasons, the trial court's order is reversed.

_____
CHRISTINE FIZZANO CANNON, Judge


Judge Wallace did not participate in the decision of this case.

---

[10] As we uphold the Board's determination that Mushroom Hill failed to meet the six Ordinance criteria discussed above, we do not reach the additional two criteria pertaining to "internal" issues (scale of the operation and site layout). We also do not reach the Board's assertion that Mushroom Hill also failed to comply with other more general aspects of the Ordinance.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mushroom Hill, LLC            :
                                 :

        v.                     :
                                   :

Swatara Township Board       :
of Commissioners,            :    No. 178 C.D. 2021
            Appellant         :

## O R D E R

AND NOW, this 8th day of March, 2022, the January 27, 2021, order of the Court of Common Pleas of Dauphin County is REVERSED.

_____
CHRISTINE FIZZANO CANNON, Judge